# United States, ex. rel., Davenport & others, *vs.* the Commissioners of Dubuque county.

The law authorizing the establishment of the seat of justice of Scott county, by a vote of its inhabitants, directing the returns of the election, together with the ballots and poll list, to be made to the sheriff of Dubuque county, who, in company with the county commissioners was to examine said returns, and on being satisfied which place had the majority of votes, a minute thereof was to be made in the proceedings of the said board of commissioners, &c., held that the sheriff was the only party to be " satisfied " in relation to such majority, the county commissioners being mere witnesses of the correctness of his proceedings.

Neither the county commissioners nor the sheriff had, in that case, a right to purge the polls, the law requiring him merely to be " satisfied " as to the number of votes, and not as to their genuineness.

The writ of mandamus, generally issues to a public fuctionary, to perform some specific duty, and will never be granted where there is any other adequate remedy.

Appeals do not lie from the board of county commissioners to the District Court, on account of their omitting to discharge some specific duty involving no discretion.

Neither will they lie from any decision not embraced in the scope of their legitimate duties as county commissioners.

For either of these reasons an appeal would not lie in the present instance, on account of the county commissioners neglecting to make the entry in their proceedings, required by law.

The writ of Quo Warranto would not have lain in this case, there being no office or franchise in controversy.

Where a discretionary duty is imposed on an inferior tribunal, a writ of mandamus will issue, to compel that tribunal to act in the premises, but not to direct in what manner it shall act.

In the present case, the duty of the county commissioners was not discretionary, but specific, and the writ of mandamus was the proper means of compelling its performance.

The act required of the commissioners was to be performed, not in their private capacity, but as a board, and therefore, their successors may be required to perform the act incumbent on *them*.

The court of highest original jurisdiction is the proper tribunal to issue a mandamus.

The Supreme Court of this territory, although an appellate court, is still authorized by statute to issue writs of mandamus, when such an act is necessary to enforce the administration of right and justice throughout the territory, but in order to justify such an act. it must appear to be stricly *necessary*.

A resort to the Supreme Court in the present case was not "necessary" within the meaning of the statute, and therefore the proper District Court was the proper tribunal to which application should have been made for the writ of mandamus.

At the last term of this court an alternative mandamus was granted in this case, and a motion was now made to render the same perpetual. The history of the case and the arguments for and against the motion are sufficiently set forth in the opinion of the court.

For the relators, GRANT & LEARNED.

MITCHELL & THOMPSON, counsel for respondents.

PER CURIAM, MASON, CHIEF JUSTICE.—The delicacy and importance of this subject justify us in having devoted so much time to its discussion, and call for much circumspection in this court in making its decision. We have given to the very elaborate and able arguments that

have been addressed to us our careful consideration, and shall now proceed to state the conclusions to which we have been led.

In 1838, the legislature of the territory of Wisconsin authorized an election to be held in the county of Scott; for the purpose of determining which of the two rival towns, Rockingham and Davenport should, thenceforward be the seat of justice of that county. Returns of said election, together with the ballots and poll list were to be made to the sheriff of Dubuque county, who in company with the county commissioners, or two of them, was to proceed to examine said returns, and on being satisfied that either of the places named had a greater number of votes than the other, the town having the greatest number of votes was thenceforward to be the seat of justice of Scott county, and a minute thereof was directed to be made in the proceedings of the said board of commissioners of Dubuque county.

It appears that the election was held—the returns made, and that upon counting the votes there were fourteen more for Rockingham than than for Davenport. The board of commissioners, however, without the concurrence of the sheriff, as it would seem, went into an enquiry as to the legality of some of the votes polled, and became satisfied that eighteen illegal votes had been cast for Rockingham, leaving a majority of four votes in favor of Davenport, and they certified accordingly.

Previous to the session of this court, in July 1839, notice was served on the county commissioners of Dubuque county, that at the said session of the court, a motion would be made directing them to amend and correct their entry aforesaid. At that session, upon sufficient reason therefor, being shown an alternative mandamus was ordered, and a motion is now made for a peremptory mandamus.

The first thing into which we propose to enquire is the legality of the proceedings of the Dubuque commissioners. Were they authorized to look behind the returns and examine into the legality of the votes polled? It is contended that they are to be "satisfied" that one of the places has a greater number of votes than the other—that the word "vote" means "lawful vote," and that therefore an examination into the legality of such votes was indispensable.

But were the *county commissioners* to be "satisfied" in the case? The law declares that the returns shall be made to the *sheriff*, who shall in company with the county commissioners, proceed to examine said returns, and on being satisfied, &c. The grammatical construction of this language clearly points to the sheriff as the person to be "satisfied"

—that he was to count the votes—the commissioners being merely present as witnesses, and in order to record the result.

But even *supposing the opposite construction to be correct, of what were they to have been* " satisfied ? " Not of the legality of the votes, but only of their number on each side. If it had been intended that they should have purged the polls, some direct authority would have been given for that purpose. Some mode of trial would have been pre-scribed—some means of taking testimony provided, and other measures taken to give both parties an equal opportunity for contesting antago-nist votes, and for securing a fair and open investigation. Nothing of all this was done. We are therefore clearly of the opinion that the in-spectors of election were the only tribunal authorized by law to deter-mine the qualification of the voters—that the sheriff of Dubuque county was to satisfy himself which place had the greatest number of votes, and that the commissioners of Dubuque county, were to make a minute thereof in their records, and that was all their duty.

Our next enquiry will be, whether the writ of mandamus was the proper remedy for the relators. This writ generally issues to compel a public functionary to perform some specific duty. It will never be granted where there is any other adequate remedy as is usually the case in all transactions between private individuals.

It is contended on the part of the respondents that if the commission-ers had erred, the proper remedy was an appeal to the District Court. We think otherwise. The appeals thus authorized, must doubtless be understood to refer exclusively to acts performed in the discharge of their ordinary duties, and such as imply the exercise of some discretion on their part. If, for example, the law had imposed on these commis-sioners the duty of fixing the seat of justice of Scott county themselves, this being no part of their duty as county officers, there would have been no appeal. Again, the law renders it incumbent on them to hold a session at certain fixed periods. Should they neglect to do so, no appeal would lie for the act to be performed is specific.

In the case we are now considering, not only was an extraordinary duty imposed upon them, but that duty consisted in the performance of a specific act which left them no discretion. It was not a " decision " within the meaning of the statute. We are therefore clearly of the opinion that no appeal lay therefrom to the District Court.

It is farther contended that the writ of *Quo Warranto* is the proper remedy, but the authorities cited do not sustain the position. They refer to cases where one person claimed an office which was held by

another under color of right.   Our own statute provides that where any person or persons shall usurp,  intrude into, or unlawfully hold or exercise any public civil office, or any franchise within this territory, or any office in any  corporation created by the authority of this territory—or when any public civil officer shall have done or suffered any  act, which by the provisions of law shall work a forfeiture of his office, or when any association  of persons shall act as a  corporation within this  territory, without being lawfully incorporated,  the district attorney of the  proper county shall, when directed, &c., file an information  in the nature of  a Quo  Warranto in the District Court.   (Iowa Laws, page 390.)   Under that statute it cannot be contended that the writ of Quo  Warranto could issue, unless this is an  " office " or a  " franchise. "   We think it neither.   If it be either, in whose hands is it ?   True, the people of the  town of Davenport might be benefitted by having the seat  of justice  located there, but they might be equally so by  the erection of public  buildings, the termination of a railroad, the creation of a water power and the like. In all these cases the benefit is only  incidental.   They have a collateral interest, but not a vested right,  which will be recognized  by the laws and which is essential to the constitution of an office or franchise.

But it is insisted that a  mandamus should not be granted in this case, because the commissioners have  already  acted on the subject, and authorities have  been adduced  to show that it will only issue to compel action, not to direct what that action  shall be.   This position is doubtless correct,  where the act sought to be enforced is one resting  in the discretion of an inferior tribunal or other public functionary.   But where the law enjoins the performance of a specific  act, obedience to that law, may in the absence of other remedies, be enforced by writ of mandamus. Such is the case in the present instance.

The general purpose of this writ is to prevent disorder  from a failure of justice or defect of polic e, rather than to afford a private  remedy.— In this case the public have an interest in the establishment  of the county seat of Scott county, and that interest  cannot be adequately secured in any  other manner.   The  entry in the  proceedings of the  board of commissioners of Dubuque county, was to be the only  record of the fact of either town being the seat of justice.   Not to have  that  entry made therefore, would be a  " failure of justice, "  and might occasion a great "defect of police,"  from which disorder  might very  probably arise.— The aid of this writ was therefore very properly invoked.

But it is said the county commissioners have been  changed since the entry should have been made.   No difficulty can arise from that source.

They were required to act in their official, not in their private capacity. It was the county commissioners of Dubuque county, not the particular individuals composing that board, who were to make the entry in their proceedings. That same board still exists, and is fully competent to perform the prescribed duty.

It only remains to enquire whether application for the writ of mandamus was properly made to this court. The case of Marbury vs. Madison, 1 Cranch, 137, settled the principle that courts of merely appellate jurisdiction could not issue this writ except in aid of their appellate powers. It matters not from whence a court receives its authority, whether from a constitutional provision or from a legislative enactment. If limited entirely to an appellate jurisdiction, it would have no power to issue this writ as an original proceeding. It is therefore necessary for us to enquire into the character of the constitution of this court. The organic act of this Territory, after providing for a Supreme, District and other courts, declares that their jurisdiction shall be as limited by law. The same act (Sec 12) provides that the then existing laws of the territory of Wisconsin shall be extended over this territory, so far as the same are not incompatible with the said organic act.

The only statute which we find defining the jurisdiction and powers of this court, is contained in the acts of 1836, page 23. The first section of that act declares, "that the Supreme Court of the Territory shall have and exercise an appellate jurisdiction only, &c." Had this been the only provision in relation to the subject, there would have been no difficulty in disposing of the present question. But the second section of the same act provides "that the Supreme Court shall have power to issue writs of Habeas Corpus, Mandamus, Quo Warranto, Prohibition, Error, Supersedeas, Procedendo, Certiorari, Scire Facias, and all other writs and process not specially provided for by statute, which may be necessary to enforce the administration of right and justice throughout the territory."

On the one side it is contended that this section modifies that which precedes it so far as to authorize any of the writs therein named to be issued in almost all cases for the promotion of justice and the establishment of right throughout the territory. On the other hand it is insisted that these writs are only authorized so far as the same are necessary to carry out the appellate powers of this court, that the provisions of the two sections should be construed as that they might exist together, and that it was not to be presumed the legislature would make so positive

and explicit a declaration on a point of such importance, which they in-
tended to modify so materially in the very same act.

We do not concur entirely in either of these constructions of this law.
If practicable the two sections must receive such an interpretation that
they may both exist together. But if they are wholly irreconcilable,
the latter becomes paramount. The second section above referred to,
after enumerating the writ of mandamus and several others, (some of
which could hardly become auxiliary to the exercise of appellate power,)
authorizes the issuing of all writs and process which may be necessary
to enforce the due administration of right and justice throughout the
territory. The fact that the writ of Quo Warranto is mentioned (and
perhaps some others) which could only be used in the exercise of origi-
nal power, negatives the idea that these writs are only to serve as aux-
iliaries in the exercise of appellate jurisdiction.

Still, although the two sections cannot be wholly reconciled, it is the
duty of this court to give them such a construction as shall render the
discrepancy as small as possible. This will be done by limiting the
issuing of the writs mentioned in the second section to cases in which
they may be " necessary" to enforce the due administration of right and
justice throughout the territory. They are not to be granted in all cases
whenever required for these purposes, but only when their interposition
becomes "*necessary.*" If therefore, contrary to the declaration con-
tained in the first section of the statute, we are to venture upon the
exercise of original judicial power, the occasions on which it should be
exerted, should be as few as possible.

We are confirmed in this view of the case by the consideration that
if the writs and process authorized by the second section of the statute,
are to be issued from this court in ordinary cases whenever their inter-
position may be found beneficial, the business of the court may become
very much augmented, to the great inconvenience and delay of suitors,
and to the detriment of the public interest. Cases of the most trivial
nature may be brought from the extreme portions of the territory, with
perhaps little other object than to harrass and oppress, or to indulge some
petty feeling of malice. We have therefore no hesitation in coming to
the conclusion that resort in such cases can only be had to this court,
where, for the due administration of right and justice, such resort be-
comes "*necessary.*"

Is that the case in the present instance? We have already come to
the conclusion that " to enforce the due administration of right and jus-
tice" in the present instance the writ of mandamus was the only effectual

process. In other words it is "necessary" within the meaning of the statute. It only remains to enquire whether it could not more properly be issued by another tribunal. If the proper District Court has jurisdiction of cases of this kind, recourse to the Supreme Court can certainly not be "necessary." It would doubtless be much more convenient and proper to apply to the District Court in the first instance.

From an examination of the various statutes in force in this territory it appears to be the evident intention of the legislature to vest the District Courts to the fullest extent, with general original jurisdiction in matters civil as well as criminal, and both at law and in equity. It appears to be the policy of the law to permit suitors a resort to these more convenient tribunals with the right of appeal to the Supreme Court. The seventh section of the laws of Wisconsin above alluded to, (Laws of 1836 page, 24) gives the District Courts in term time and the judges thereof in vacation, power to award throughout the territory returnable in the proper county, writs of injunction, ne exeat, habeas corpus, and all other writs and process that may be necessary to the due execution of the powers with which they are vested. Writs of mandamus in all ordinary cases must certainly be included in this number. It may in some instances become necessary to issue a writ of Quo Warranto or mandamus, to the Judge of one of the District Courts. It would probably then become "necessary" that the writ should issue from this court, and the law in that case gives us jurisdiction. But in all ordinary cases we deem it much more expedient and proper, more convenient to the parties concerned, and more beneficial to the public in every respect, that application for purposes of this nature should be made to the District Court of the proper county, and such we believe to be the law of this territory.

The Supreme Court of the United States in the case of Kendall vs. the United States (12 Peters 524) furnish high authority for many of the views herein contained, and especially in relation to the District Court being the proper tribunal for issuing the writ of mandamus. One of the Judges, in delivering his opinion in that case, after stating that this was a high prerogative writ, which in England, only issued from the King's bench, where the King formerly sat in person, and that it was confined to cases of a public nature, says: "Upon the same principle, I believe it may be affirmed without exception, unless where a statutory provision has been made, that in every State of the Union, where the common law prevails, this writ issues only from the court possessing the highest original common law jurisdiction." The District Court of this territo-

ry possesses that jurisdiction, so that in the absence of all statutory authority, writs of mandamus, should, in accordance with the practice of the States of the Union issue from that court.

The exercise of that power, therefore, by the Supreme Court being unnecessary in ordinary cases, for the reason that the District Courts are fully competent for that purpose ; we are clearly of the opinion that we have no jurisdiction over the matter, and the motion for a peremptory mandamus will of course be denied.

We might have avoided deciding more than this last point, but inasmuch as the whole case has been argued at length, and as it will tend to abridge future litigation on the subject, we deemed it proper to express our views on the entire subject.