STATE EX REL. WHITESIDE, RELATOR, *v.* FIRST JUDICIAL DISTRICT COURT, RESPONDENT.

[No. 1486.]

[Submitted October 2, 1900.  Decided December 24, 1900.]

*Commitment by Notary Public—Discharge under Habeas Corpus—Jurisdiction of District Court—Review by Certiorari—Constitution—Jurisdiction of Supreme Court—Supervisory Control—Exercise under Original Writs—Supervisory Writ—Legislative Authority.*

1.  There are three indispensable requisites to the granting of the writ of *certiorari*: (1) Excess of jurisdiction in the court making the order complained of; (2) absence of the right of appeal; and (3) lack of any plain, speedy, and adequate remedy other than *certiorari*.

2.  Jurisdiction is the power to hear and determine the questions *coram judice* in the particular case.

3.  Where a witness, who was committed by a notary public, was discharged under a writ of *habeas corpus* issued by the district court of the district wherein the commitment was made, the Supreme Court has no power under a writ of *certiorari* to review the action of the district court, since the district court had authority to make

the discharge, and was acting within the bounds of its appropriate jurisdiction, under Constitution, Art. VIII, Sec. 11, and Penal Code, Sections 2740, 2742.

4. The grant, by the Constitution of appellate jurisdiction to the Supreme Court (Art. VIII), implies all the instrumentalities necessary to make it effective.

5. The provision of the Constitution (Art. VIII, Sec. 2) that the Supreme Court "shall have a general supervisory control over all inferior courts," is a distinct and separate grant of jurisdiction, independent of any other power granted.

6. The provision of the Constitution (Art. VIII, Sec. 3) that the Supreme Court "shall have power in its discretion to issue and to hear and determine writs of *habeas corpus, mandamus, quo warranto, certiorari,* prohibition and injunction," is a grant of power without limitation or qualification, authorizing the Supreme Court to issue these writs in its discretion for whatever purposes they are suitable.

7. The Supreme Court has no authority, by virtue of its supervisory control, to vacate under a writ of *certiorari* an order of the district court discharging a prisoner in *habeas corpus* proceedings, since the supervisory control constitutes a grant of power independent of the court's appellate jurisdiction or power to issue original writs, and cannot be exercised under any original writ specified in Art. VIII, Section 3 of the Constitution.

8. Constitution, Art. VIII, Sec. 2, confers on the Supreme Court a general supervisory control over all inferior courts "under such regulations and limitations as may be prescribed by law." *Held,* that under this last clause the legislature could not decrease the power granted to the Supreme Court, but had power to provide the mode of procedure to be employed, by which, and the limitation as to time within which the power granted should be exercised.

   *Semble:* that the legislature by failure to act cannot render the powers thus granted to the Supreme Court of no avail, but that the Supreme Court has power, in the absence of action on the part of the legislature, to establish rules for the exercise of its appellate and supervisory jurisdiction.

9. The contention that the Supreme Court's power of supervisory control over inferior courts is dormant because there is no legislation prescribing the mode of its exercise, cannot be sustained since Section 205 of the Code of Civil Procedure—if any legislation is needed—is ample to authorize its use in its utmost vigor.

10. The proper instrument by which the Supreme Court exercises its power of supervisory control over inferior courts is the "supervisory writ," which must be framed when the case properly arises.

APPLICATION by the State, on the relation of Fred White-side, for a writ of *certiorari* to review the action of the district court of Lewis and Clarke county in releasing George L. Ramsey on a writ of *habeas corpus.* Application dismissed.

## STATEMENT OF THE CASE.

Original application for writ of *certiorari.* On September 20, 1899, an action was pending in the district court of Silver Bow county, in which the relator herein, as plaintiff, sought to recover from the Miner Publishing Company and others damages for an alleged libel. On that day notice was given by plaintiff, under the provisions of Section 3342 of the Code of Civil Procedure, that the depositions of certain witnesses

residing at Helena, in Lewis and Clarke county, would be taken by Albert I. Loeb, a notary public at Helena, to be used on the trial of the cause. The notary thereupon issued a subpœna requiring one George L. Ramsey to attend before him on October 2, 1899, the time fixed by the notice, to give his deposition, and also to bring certain books of the Union Bank & Trust Company, of which the witness was cashier. The witness attended, but failed to bring the books, giving as his excuse that their absence from the bank at that time would disturb and hinder the business for the day, and that he thought that he could give all the information desired of him without them. Thereupon counsel for plaintiff proceeded to question the witness, who gave his answers promptly and readily. Presently the following questions were put and answers made:

"Q. I think you stated, Mr. Ramsey, that you have in your bank a record showing large bills which have passed through your bank, and that you denominate that the 'Large Bills Register?'

"A. Yes, sir.

"Q. I will ask you, Mr. Ramsey, if you can state from your own knowledge, irrespective of your register of which you have spoken, what, if any, one thousand dollar bills came into your bank since the first day of January, 1899, and prior to the first day of June, 1899, and, if so, who paid the bills in, and to whom they went out, and in what transaction.

"(Objected to as immaterial and irrelevant.)

"A. I could not give it to you in detail, of course, because there was a great many of them through us all the time. If you confine the query to the members of the legislature, I can answer the question.

"Q. I am not confining it to the members of the legislature.

"A. I couldn't remember them all in detail. There is a great many of them. We get them from various sources, and pay them out, of course, all along. I would like to state, however, that none of them were paid to or received from

members of the legislature or to members of the legislature.

"Q. I will ask you, Mr. Ramsey, now, if you will bring your 'large bills register' and the 'out of town drafts' and 'checks' register before I can ask you any further questions."

The books mentioned in the last question were among those which the witness had been required by the subpœna to bring. After consultation with counsel, the witness refused to produce them on the grounds: (1) That they were not shown to be material; (2) that they were not shown to have been kept with the knowledge or under the direction of any party to the suit, and anything contained in them was hearsay; and (3) that they were the private records of the bank, and that he did not feel that it was proper, or that he could be compelled, to produce them for the inspection of parties to controversies with which the bank had no connection. Upon request of counsel for plaintiff, the notary informed the witness that the parties would not be permitted to inspect the books; that he was required to bring them solely for his own use to aid him in stating particularly the matters about which it was desired to question him; and that he was required forthwith to comply with the command of the subpoena. The witness refused to obey the order, and was thereupon committed to the custody of the sheriff of Lewis and Clarke county, to be imprisoned until he should signify a willingness to do so.

On October 3, 1899, upon application to the district court of Lewis and Clarke county, the witness was discharged under a writ of *habeas corpus*. The purpose of this proceeding is to have the order of the district court annulled on the ground that it was made in excess of jurisdiction.

*Mr. W. S. Hartman*, and *Mr. T. J. Walsh*, for Relator.

The doubt expressed by the court upon the presentation of the application as to whether *certiorari* will lie, involves considerations of the gravest and most serious moment. That there is no appeal from an order releasing a prisoner on *habeas corpus* is hardly debatable. The right of appeal is a purely

statutory right, and does not exist unless the statute provides for it. All the works upon *habeas corpus* agree that there is no review by appeal, unless pursuant to express statutory authority. It was indeed held in the State of Minnesota, without serious consideration evidently, that an appeal would lie as ·from a final order in a special proceeding. *State* v. *Buck-ham*, 13 N. W. 902. But the conclusion reached in that case was repudiated by the Supreme Court of North Dakota, after elaborate and grave consideration, the statutes of the two states being identical, though the latter state usually follows the decision of the former. *Carruth* v. *Taylor*, 77 N. W. 617.

The power to review an order releasing a prisoner upon *habeas corpus* by a writ of *certiorari* was exercised by this Court in the case of the *State ex rel. Nolan* v. *Brantley*, 20 Mont. 173. It is true that in that case the Court did not enter into a discussion of the right to have the writ, but the Attorney General in his brief in that case, anticipating that the propriety of reviewing in this method would be questioned, declared that it was not an open question in this Court, and referred.to numerous authorities in support of his contention. The counsel for the respondent evidently conceded the right to so review the decision and the court evidently passed upon it, for they took jurisdiction and annulled the order. They did better than that in the State of Missouri. (135 Mo. 1, 36 S. W. 231.) In that State a prisoner had been tried, sentenced, he had appealed to the Supreme Court, by which court the judgment of the lower court had been affirmed, and the Sheriff was about to carry out the sentence of execution. He thereupon applied to a Judge of one of the trial courts for a writ of *habeas corpus*, which was issued, but before the return was made the Attorney General of the State sued out a writ of *certiorari* from the Appellate Court of that State, by which court the writ of *habeas corpus* was quashed. The propriety of a review of the proceedings resulting in the issuance of a writ of *habeas corpus* by the trial Judge was considered by the court in that case, and thoroughly vindicated. These cases are by no means exceptional. The regularity of this

procedure seems to be one of the settled questions in the law. The text writers declare it to be the proper remedy to review an order made in *habeas corpus* proceedings. (Spelling on Ex. Leg. Rem. 1938.) It has been frequently used for this purpose. It was resorted to in the case of *Ableman* v. *Booth*, 3 Wis. 1, an historic case. Complaint had been lodged against Booth before a United States Commissioner under the Fugitive Slave Law, for aiding in the escape of a slave, and he was by the Magistrate committed to the custody of the United States Marshal to await the action of the Grand Jury. Application was made to one of the justices of the Supreme Court of the State of Wisconsin in vacation for a writ of *habeas corpus*, and on the return he was by the Judge discharged. The United States Marshal, Ableman then sued out a writ of *certiorari* from the Supreme Court of the State of Wisconsin, and upon this writ the action of the Judge was affirmed. (See, also, *Ex parte Goode*, 19 Ark. 410; *State* v. *Herndon*, 107 N. Carolina, 943; *In re Knox*, 64 Ala. 463; *In ex parte Croom*, 19 Ala. 561; *People* v. *Cassels*, 6 Hill, 162; *State* v. *Smith*, 26 N. W. 258; *People* v. *Hackley*, 24 N. Y. 74; *Livingston* v. *Livingston*, 24 Ga. 379; *Field* v. *Pulman*, 22 Ga. 93; *People* v. *Mayers*, 16 Barb. 362; *Gilbert* v. *Board*, 40 Pac. 264.)

The rule is general that *certiorari* lies to review the decision of the lower tribunal when there is no appeal. (*People* v. *Turner*, 1 Cal. 152; *Ex parte Stephen I. Field*, 1 Cal. 187.) There being no appeal the right to review by *certiorari* follows as of necessity from the grant of power to this court by the Constitution. It is given power, (1) To issue writs of *certiorari*. Sec. 3, Art. 8, Constitution of Montana. (2) To exercise a general supervisory control over all inferior courts. Sec. 2, Art. 8, Constitution of Montana. (3) To issue and hear and determine writs of *certiorari* in proceedings for contempt in the District Court. Sec. 3, Art. 8, Constitution of Montana. A provision similar to the one referred to above giving to this court general supervisory control over all inferior courts is a frequent one in the constitutions of the American States. It is found in the constitutions of Alabama, Arkansas,

Colorado, Iowa, Kentucky, Michigan, Missouri, North Carolina, North Dakota, South Carolina, South Dakota, Wisconsin and Wyoming. ' It is an important consideration, however, which may possibly have been lost sight of in some of the decisions of this court concerning the writ of *certiorari* that no such provision is found in the constitution of the State of California. The writ of *certiorari* is held in the states whose constitutions contain this provision, to be an appropriate writ for the exercise of this general supervisory power. ( *Wilson* v. *Bartholomew,* 45 Mich. 41; *Swift* v. *Wayne,* 64 Mich. 479.)

It is further held in these cases, what is of course indisputable, that it is beyond the power of the Legislature to take away from this court any portion of this supervisory power, or limit or restrain the proper operation of the appropriate writs for the exercise of it. It follows that whatever may be the provisions of the statute concerning the writ of *certiorari,* or, however narrow its operation as therein prescribed, the power to use it by this court in all its vigor and to its entire scope as it was used at the time the Constitution was adopted, remains with this court.

A consideration of these three distinct grants of power may be of service. It certainly cannot be considered that they should cover identically the same field. The court was granted power in the first place to issue the writ of *certiorari*; in addition to that, it was granted general supervisory control over inferior courts, which included the power to issue the writ of *certiorari,* and lastly it was granted power to issue and hear and determine writs of *certiorari* in proceedings for contempt. It may be here noted that the power last referred to is not granted to the Supreme Court of California by the constitution of that state either. It must be conceded also that the power granted by this express provision must embrace something more than a mere inquiry into the jurisdiction of the court committing for contempt, as that power had already been granted in the grant of power to issue the writ of *certiorari,* and we entertain no doubt that by virtue of grant of this power, this Court is authorized to review the entire proceed-

ing,—not only questions of jurisdiction, but questions of law if not questions of fact, arising in the course of the proceedings as well. (*Miskimins* v. *Shauer*, 58 Pac. 411.)

It will be observed that this grant authorizes the Court to review contempt proceedings in the district court, and questions of law arising on the record may undoubtedly be reviewed as well as questions of jurisdiction, else the provision is a meaningless repetition of the power already granted to issue the writ of *certicrari.* Now, under the general supervisory power, this Court would have no power to review questions of law occurring in the course of proceedings which took place in the district court acting within the scope of its jurisdiction, but under that grant it has the power to review questions of law arising in the course of proceedings before an officer or tribunal not proceeding in accordance with the course of the common law, though it proceeds within its jurisdiction. A failure to consider the force of these constitutional provisions, and a strict adherance to the letter of the statute without a consideration of them, may possibly have led this Court into error, not in any decision that it rendered, but in some declarations it has made concerning the scope of the writ of *certiorari.*

In the cases to which reference is made the writ had generally if not universally gone to the district court, and the rule announced was correct in the particular instance, but it is the settled law concerning the writ of *certiorari* that there is a difference in its scope of action, when it goes to an inferior court of record, and when it goes to an officer or tribunal exercising judicial powers not in accordance with the course of common law. In the former case it reviews questions of jurisdiction only. In the latter it reviews questions of jurisdiction, as well as questions of law arising upon the record in the exercise of that jurisdiction. The rule is thus expressed by the Supreme Court of the state of Wisconsin, whose constitution it will be remembered contains the general supervisory grant of power to the supreme court. "The rule is well settled in this Court that the only question arising on the mo-

tion, (a motion to quash a writ of *certiorari*) is the question of jurisdiction.  Where the writ issues to review the proceedings of a court, that is the only question which will be examined, though it is otherwise when it issues to review the proceedings of officers or bodies not proceeding according to the common law." (*State* v. *Circuit Court*, 38 N. W. 192.) The same distinction was pointedly made in the case of *Gilbert* v. *Board*, 40 Pac. 264; *Jacksonville* v. *Bay*, 16 So. 290, (Fla.); See also *State ex rel. Moreland* v. *Whitford*, 11 N. W. 424; *State* v. *Dodge Co.* 13 N. W. 680.  It is with reference to the use of this writ in its appropriate function as addressed to officers (other than courts) exercising judicial power that a standard writer uses the following language:  "It was formerly held that the higher or revisory court in its review of the cases brought upon *certiorari* was limited to the question alone of the jurisdiction of the inferior court or tribunal, but now the great weight of authority seems to have removed that restriction or limitation, and the court examines the law questions involved in the case which may affect its merits." (Harris on *Certiorari*, I.)

And the power to so review the proceedings of an inferior tribunal is generally referred by the courts to the grant made to the supreme court to exercise generally supervisory control over inferior tribunals.  (See *People* v. *Judge*, 32 Mich. 95; *Livingston* v. *Livingston*, 24 Ga. 379; *Field* v. *Putnam*, 23 Ga. 93; *Ableman* v. *Booth*, 3 Wis. 1; *State* v. *Herndon*, 107 N. C, 934; *In re Knox*, 64 Ala. 463.)  This last case is a significant one in the determination of the question of the extent of review upon a writ of *certiorari*. Knox, a lawyer, refused to pay a license imposed by municipal regulation.  The mayor of the city, acting as a municipal court, and within his lawful jurisdiction, imprisoned him upon judgment showing his failure to pay.  He was released by the circuit judge on *habeas corpus*, that officer adopting his view that the act was unconstitutional.  The circuit judge doubtless was clothed with jurisdiction to determine as a question of law whether the act was constitutional or was not constitutional.

He had jurisdiction to determine the matter wrong as well as jurisdiction to determine it right. The supreme court, however, awarded a writ of *certiorari*, and, inquiring into the constitutionality of the act, took a different view of it from the circuit judge, quashed his order, and remanded the prisoner. Without particularly referring to the grant of power in the Constitution to exercise general supervisory control over inferior tribunals, this Court has pursued what in law is substantially the same course in a number of instances. In the case of *State* v. *Brantly*, above referred to, the learned district judge had power beyond question upon the writ of *habeas corpus* to inquire into the question of law as to whether or not the judgment which had been rendered against Day and upon which he was incarcerated, was or was not so wanting in support by reason of the defective verification of the information or the want of any verification at all as that the whole proceedings were void. He had jurisdiction to decide that question wrong, as well as jurisdiction to decide it right. He was acting unquestionably within the scope of his jurisdiction when he determined that the judgment was void. But this Court did not stop with an inquiry into the question as to whether he had or had not jurisdiction to determine that question, but reviewed his conclusions concerning it and reached the result that he was in error in his determination, reversed his order and dismissed the *habeas corpus* proceedings. So in the case of *In re MacKnight*, 11 Mont. 126. Here the entire matter was gone into by the Supreme Court and it was held that the question for failure to answer which he committed for contempt was immaterial to the inquiry and that he was justified in refusing to answer it, so the proceedings were vacated. (Bailey on Jurisdiction, Vol. II, Sec. 443.)

*Messrs. Corbett & Lee, Messrs. Cullen, Day & Cullen, and Mr. Jesse B. Roote (Messrs. Clayberg & Gunn of Counsel)* for Respondent.

It must be remembered that we have no common law writ

of *certiorari* in Montana. It is purely a statutory proceeding, and therefore any cases from courts in jurisdictions where the common law writ is still in force, or from courts where there are statutory provisions entirely dissimilar to ours, can have no bearing or application. *State* v. *District Court*, 10 Mont. 401. The following are the only provisions of our Constitution and Statutes upon the subject which we have been able to find: Constitution, Art. VIII, Secs. 2, 3, 15; Code of Civil Procedure, Secs. 1940 to 1950; 170, 2001, 1860.

We submit that in this state, under the statutes and decisions, the writ of *certiorari* will not lie in this case for the following reasons:

· Because if the decision of the court below can be reviewed by this Court, such review must be upon appeal. Section 1720, Code of Civil Procedure, provides: "A judgment or order in a civil action, except when made final by this Code, may be reviewed as provided in this Title, and not otherwise." Section 1722 provides; "An appeal may be taken to the Supreme Court from the District Court in the following cases: "1. From a final judgment entered in an action or special proceeding commenced in the District Court, or brought into the District Court from another court." We submit that if the ruling of the court below can be reviewed by this Court, it must be done by appeal under this section. This Court, in the case of *State* v. *Newell*, 13 Mont. 302, held that a *habeas corpus* proceeding is a special proceeding in the nature of an action, and that the disposition of the writ is a judgment. Section 1000 of the Code of Civil Procedure defines a judgment in the following language: "A judgment is a final determination of the rights of the parties in an action or proceeding." (*State of Minnesota* v. *Buckham*, 13 N. W. 902; *State* v. *Kirkpatrick*, 6 N. W. 588; *In re Hammill*, 69 N. W. 577; *Winton* v. *Knott*, 63 N. W. 783; *McKercher* v. *Green*, 58 Pac. 406; *Miskimmons* v. *Shaver*, 58 Pac. 411.)

Because the decision sought to be reviewed is final, under the statutes and cannot be reviewed by this Court. Sec. 2763 of the Penal Code of Montana provides as follows: "No per-

son who has been discharged by the order of the court or judge upon *habeas corpus* can be again imprisoned, restrained, or kept in custody for the same cause, except in the following cases: (1) If he has been discharged from custody on a criminal charge, and is afterward committed for the same offense, by legal order or process. (2) If, after a discharge for defect of proof, or for any defect of the process, warrant, or commitment in a criminal case, the prisoner is again arrested on sufficient proof and committed by legal process for the same offense."

The decision of the court below was that the petitioner, Ramsey, should be discharged from custody. This, we submit, under the section of the Penal Code above cited, is a final adjudication and not reviewable by this or any other court in any proceedings. (*Sollers* v. *Township Board,* 34 N. W. 888; *State* v. *Schank,* 9 N. J. L. 107; *Martin* v. *State,* 12 Mo. 474; *Ex parte Page,* 49 Mo. 291; *Ex parte Jilz,* 64 Mo. 205, (27 Am. Rep. 218); *State* v. *Kirkpatrick,* 6 N. W. 588; *People* v. *Fairman,* 26 N. W. 769 and cases cited; *Yates* v. *People,* 6 Johns, 337; *Grady* v. *Superior Court,* 64 Cal. 155.)

*People* v. *Fairman,* (Mich.) 26 N. W. 729 holds that where an order is made discharging a prisoner on a writ of *habeas corpus,* such order is final and conclusive. The court say: "When an order is made discharging the prisoner, the rule has almost universally prevailed independent of statutory provisions that the order for discharge is final and conclusive." (*Ex parte Jilz,* 64 Mo. 205, (27 Am. Rep. 218; *Yates* v. *People,* 6 Johns, 337; *Miskimins* v. *Shauer,* 58 Pac. 411; Hawes, Jur. Sec. 181; *McFarland* v. *Johnson,* 27 Tex. 105; *In re Ring,* 28 Cal. 251; *Lea* v. *White,* 4 Sneed, 73; *People* v. *Fancher,* 1 Hun. 28; *In re Curley,* 34 Iowa, 185; *Hammond* v. *People,* 32 Ill. 446; *In re Blair,* 4 Wis. 526; *Perry* v. *McLendon,* 62 Ga. 601; *Ex parte Pattison,* 56 Miss. 162; *Weddington* v. *Sloan,* 15 B. Mon. 152.)

Because the writ, if granted, would be of no benefit, there being no manner in which this Court could enforce its judgment. Under Section 1948, Code of Civil Procedure, above

recited, this Court can only enter judgment "either affirming or annulling or modifying the proceedings below." If the proceedings below are to be affirmed, then the writ is futile. But suppose the Court on final hearing determines that the proceedings in the court below should be annulled or modified, how can this Court enforce such judgment? If the proceedings sought to be reviewed are annulled, the effect is the same as though they never had been taken, and the commitment of the notary stands, and the petitioner, Ramsey, is still committed for the contempt in direct violation of Section 2763 of the Penal Code. No modification of the order sought to be reviewed could be conceived of. Judge McIntire was either right or wrong, as a matter of law, in his decision. It therefore results that any judgment of this Court, could not be beneficial, and therefore the writ does not lie.

Because this Court only has authority on writ of *certiorari*, to enquire into and determine the question of the jurisdiction of the lower court. Under the Montana statutes as has been held by this Court, the only questions which this Court will consider on *certiorari*, are: (1) Did the court have jurisdiction in the proceeding upon which it passed? and (2) Did it exercise such jurisdiction regularly? (*State* v. *District Court*, 56 Pac. 281; *State* v. *County Commissioners*, 21 Mont. 469; *State* v. *District Court*, 17 Mont. 329; *State* v. *District Court*, 17 Mont. 411; *State* v. *District Court*, 15 Mont. 324; *State* v. *Ellis*, 15 Mont, 224; *State* v. *District Court*, 10 Mont. 401; *Hamilton* v. *Harwood*, 113 Ill. 154; *Frederick* v. *Clark*, 5 Wis. 191; *State* v. *Matranga*, 10 L. R. A. 248; *Harris* v. *Barber*, 129 U. S. 366; *Phillips* v. *Welsh*, 12 Nev. 158; *White* v. *Superior Court*, 42 P. 480 and cases; *State* v. *Board of Assessments*, 53 N. W. 192; *Sunberg* v. *District Court*, 16 N. W. 724.)

There is no claim made that the court below did not have jurisdiction, or that its proceedings were not regular. Counsel for relator present an argument somewhat refined on the proposition that the Supreme Court of this state is given the right to issue the writ under Section 2, Article VIII of the

Constitution. This argument seems to be based upon the theory that this section is properly quoted in their brief at the bottom of page 6 and the top of page 7, and were this quotation right there might be something in the argument. We find on examining the Constitution that the following words appear therein at the end of Section 2, viz., "under such regulations and limitations as may be prescribed by law." In none of the cases to this point, cited by relator's counsel, do we find a provision of the constitution similar to that of Montana above quoted; for instance, in the case of *State* v. *Herndon*, 12 S. E. 268, relied upon by relator, Article IV. Section 8, of the constitution of North Carolina, provides that the supreme court has "the power to issue any remedial writ necessary to give it a general supervision and control over the proceedings of inferior courts." In the case of *Swift* v. *Wayne Circuit Judges*, 31 N. W. 434, the court say: "The constitution of Michigan in terms gives to the supreme court a general superintending control over all inferior courts with power to issue writs of error and other writs named both original and appelate." Article VI, Section 3.

The provisions of the constitutions cited by relator are self-executing. The power to issue and hear the writs is granted without any limitation. But the Constitution of Montana is not self-executing. It allows a supervisory control "under such regulations and limitations as may be prescribed by law." The Legislature of Montana has prescribed by law certain regulations and limitations with reference to the exercise of the power to issue and hear the writ of *certiorari* by the Supreme Court; and these regulations limit the right to inquiring into questions of the jurisdiction of inferior courts.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the Court.

1. As was declared in *State ex rel. King et al.* v. *District Court of Second Judicial Dist.* 24 Mont. 494, 62 Pac. 820, under

a proper construction of Section 1941 of the Code of Civil Pro-
cedure there are three indispensable requisites to the granting
of the writ:     (1) Excess of jurisdiction in the court making
the order complained of;     (2) absence of the right of appeal;
and (3) lack of any plain, speedy, and adequate remedy other
than *certiorari.*    Under the Constitution (Article VIII, Sec-
tion 11) and the provisions of the Penal Code, (Sections 2740,
2742,) the witness Ramsey, had the right to apply to the dis-
trict court of Lewis and Clarke county, or to either of its
judges, to have the cause of his imprisonment inquired into;
and it was within the power of that court or its judge—it was
likewise its or his duty—upon proper application to undertake
the inquiry, and to direct the prisoner to be released, or re-
manded, in conformity with the conclusion reached upon his
rights as they were made to appear.    Jurisdiction means the
power to hear and determine the particular case presented for
consideration, as well as to make such orders and to render
such a judgment therein as the law authorizes in the class of
cases to which it belongs (*State ex rel. King et al.* v. *Dis-
trict Court of Second Judicial Dist. supra*); in brief, it is
the power to hear and determine the questions *coram judice*
in the particular case.    It therefore follows that the conclus-
ion reached and the judgment rendered in the particular case
may be either right or wrong, and still jurisdiction be in no
wise exceeded (*State ex rel. Buck* v. *Board of Com'rs of
Ravalli County,* 21 Mont. 469, 54 Pac. 939); otherwise, the
making of an erroneous order or judgment in any case would
be an excess of jurisdiction in the sense that it would be the
determination of a question *coram non judice.*    The district
court was called upon to decide upon the legality of the im-
prisonment of Ramsey; having issued the writ, and caused
the complainant to be produced before it, it was authorized
and required to pass upon the question thus presented, and it
is immaterial, upon this inquiry, whether it decided the ques-
tion right or wrong.    The order having been made that the
complainant be released, this was an adjudication that the im-
prisonment was unlawful, and this adjudication, though not

binding as a precedent upon any other court, was final and conclusive for all pruposes upon this application (*Grady* v. *Superior Court,* 64 Cal. 155, 30 Pac. 615; *Ex parte Jilz,* 64 Mo. 205; *Yates* v. *The People,* 6 Johns, 337); and it makes no difference whether the order was based upon the ground that the notary had no power to commit the witness, or whether, upon the merits of the case, no contempt was committed. Therefore, while no appeal might be taken from the order (*State ex rel. Jackson,* v. *Kennie,* 24 Mont. 45, 60 Pac. 589), and there was no other plain, speedy, and adequate remedy, still the order was not in excess of jurisdiction in the sense that it was a decision of a matter *coram non judice.* Counsel for plaintiff argues that this conclusion should not be reached, for the reason that it might lead to deplorable results. He instances the judge of the Third district, in which our state prison is situated, and points out how this judge might, under a misapprehension of the law, release many of the convicted criminals confined therein, thus setting at naught the solemn adjudications of guilt by the other district courts throughout the state and by this court. As a case in point, he cites *State ex rel. Nolan* v. *Brantly,* 20 Mont. 173, 50 Pac. 410, in which he says a gross wrong would have been done but for the timely interposition of this court by means of *certiorari* to annul the order of release made by the district court. We think, however, that the fears of counsel are more imaginary than real. As we shall presently see, this court has ample power, under its constitutional grant of supervisory control over the district courts, to prevent any such disaster. Besides, we must presume that the district courts will do their duty, and that the cases where gross and palpable wrong is done or attempted are and will be rare exceptions, and not the rule. We may not, therefore, lay down a rule which implies that these courts are not sensible of their important duties, and are not disposed to administer the law in accordance with the principles of reason and justice. Furthermore, a different conclusion would deprive these courts in a large measure of the power granted to them under the constitution, and would lay down

the rule that, in *habeas corpus* proceedings at least, they must decide right always or be held to have exceeded their jurisdiction. In our opinion, the case of *State ex rel. Nolan* v. *Brantly*, was decided upon a misconception of the functions of the writ of *certiorari.* The decision is based upon the theory that the district court exceeded its jurisdiction, because, it being made to appear that the prisoner, Day, was held by virtue of process issued upon a final judgment of a court of competent criminal jurisdiction, that court presumed to decide the contrary. This was tantamount to a declaration that the latter court should not have entertained the application of the prisoner at all. It is proper to say, however, that no question was made by counsel at the hearing in this Court as to the propriety of the proceeding, the court assuming that, if the district court was in the wrong, it exceeded its jurisdiction. Under the weight of authority the case was correctly decided upon the question considered, and, had the annulment of the order of release been accomplished by an exercise of the constitutional power of supervisory control, such action might have been justified under the rule laid down in some of the cases cited by counsel on the hearing of this case. (*Ex parte Good*, 19 Ark. 410; *State* v. *Herndon*, 107 N. C. 934, 12 S. E. 268; *Ex parte Croom*, 19 Ala. 561; *In re Knox*, 64 Ala. 463; *In re Booth*, 3 Wis. 1; *Field* v. *Putnam*, 22 Ga. 93.) But these cases were decided under constitutional and statutory provisions materially different from ours, and are not deemed of binding authority. The writ, used as it was in *State ex rel. Nolan* v. *Brantly*, was wrested from its legitimate functions, and made to accomplish an object for which it is inappropriate, for the case is rested expressly upon the ground that the district court had no jurisdiction to order the *prisoner released*.

2. What has been said in the foregoing paragraph disposes of this case, and we would rest here were it not for the fact that counsel for relator so earnestly insists that, though we should reach the conclusion stated, we should nevertheless, in

this case, annul the order of the district court by the exercise of our supervisory power, on the ground that it was made in violation of law. The defendant interposes the objection that the clause of the Constitution conferring upon this Court a supervisory control over inferior courts is not self-executing; that this power must, by the express provision of the Constitution, be exercised "under such regulations and limitations as may be prescribed by law," and not otherwise; and that, as the legislature has prescribed certain regulations and limitations under which the writ of *certiorari* may be used to inquire into questions of jurisdiction only, we may not pervert the writ from this use to review and correct mere errors appearing upon the record certified to this court. The contention is also made that a notary has no power to commit a witness for contempt.

This brings to our attention the power and jurisdiction of this Court as declared in Sections 2 and 3 of Article VIII of the Constitution, which follow:

"Sec. 2. The Supreme Court, except as otherwise provided in this Constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, and shall have a general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by law.

"Sec. 3. The appellate jurisdiction of the Supreme Court shall extend to all cases at law and in equity, subject, however, to such limitations and regulations as may be prescribed by law. Said court shall have power in its discretion to issue and to hear and determine writs of *habeas corpus, mandamus, quo warranto, certiorari*, prohibition and injunction, and such other original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction. When a jury is required in the Supreme Court to determine an issue of fact, said court shall have power to summon such jury in such manner as may be provided by law. Each of the justices of the Supreme Court shall have power to issue writs of *habeas corpus* to any part of the state upon petition by or on behalf

of any person held in actual custody, and may make such writs returnable before himself, or the Supreme Court, or before any district court of the state, or any judge thereof; and such writs may be heard and determined by the justice, or court, or judge, before whom they are made returnable. Each of the justices of the Supreme Court may also issue and hear and determine writs of *certiorari* in proceedings for contempt in the district court, and such other writs as he may be authorized by law to issue.''

Upon a proper construction of these sections depends the disposition of counsel's contention. As we understand them, they confer upon this Court: (1) Appellate jurisdiction, which is coextensive with the state; (2) a general supervisory control over all inferior courts; (3) discretionary power to issue, hear and determine the various writs enumerated; and (4) the power to issue, hear and determine such other original and remedial writs as may be necessary and proper to a complete exercise of the appellate jurisdiction. The fourth power enumerated seems to be entirely unnecessary, and appears to have been added out of abundance of caution, so that this Court might not be embarrassed by any question as to a want of means to aid in the complete exercise of its appellate jurisdiction. To this provision we shall refer later.

We shall most conveniently consider first briefly the nature and purposes of these powers. Though there has been no decision in this state defining the limits to which the review on appeal shall go, the practice and procedure provided by law and the character of relief uniformly granted by this Court thereunder since its creation have established the proposition that this Court has no power to try questions of fact, and render thereon such judgment as should have been rendered by the trial court. This was declared to be the rule by the Territorial Supreme Court to which, under Section 9 of the Organic Act, ''writs of error, bills of exceptions, and appeals,'' were allowed under such regulations as should be prescribed by law. (*Barkley* v. *Tieleke*, 2 Mont. 435; *Chumasero* v. *Vial*, 3 Mont. 376; *Ingalls* v. *Austin*, 8 Mont. 333, 20 Pac.

637). At the time of the adoption of the Constitution in 1889 substantially the same procedure which had been provided by the legislature under the practice act at the time of these decisions was continued in force by that instrument. (Schedule 1). It was re-enacted substantially in the Code of 1895, and the decisions thereunder have been in conformity with the rule declared in the early cases. (*Barden* v. *Montana Club*, 10 Mont. 330, 25 Pac. 1042, 11 L. R. A. 593, citing the foregoing cases; *Root* v. *Davis*, 10 Mont. 228, 25 Pac. 105; *Merchants' Nat'l. Bank* v. *Greenhood*, 16 Mont. 395, 41 Pac. 250, 851; *Pearson* v. *Harper*, 16 Mont. 143, 40 Pac. 171; *State* v. *Hurst*, 23 Mont. 484, 59 Pac. 911). For more than 10 years this Court has proceeded upon the assumption that, while it derives its appellate powers from the Constitution, these powers are in no respect different in extent from those possessed by its predecessor, the Territorial Court, and that they are to be interpreted and applied in the light of the conditions existent at the date of adoption of that instrument,—in other words, the extent of the power and the character of relief granted has become established and defined by uniform contemporaneous construction. (*Lord* v. *Dunster*, 79 Cal. 477, 21 Pac. 865; *Styles* v. *Tyler*, 64 Conn. 432, 30 Atl. 165).

The grant of the appellate jurisdiction from its very nature implies also all the instrumentalities necessary to make it effective. "It is an established doctrine that one of the essential attributes of appellate jurisdiction and one of the inherent powers of an appellate court is the right to make use of all the writs known to the common law, and, if necessary, to invent new writs or proceedings in order to suitably exercise the jurisdiction conferred." (*Wheeler* v. *Northern Colorado Irrigation Co.*, 9 Colo. 248, 11 Pac. 103). We cite to this point also: *Attorney General* v. *Chicago & N. W. Ry. Co.*, 35 Wis. 425; *State ex rel. Moore* v. *Archibald*, 5 N. Dak. 359, 66 N. W. 234; *U. S.* v. *Dubuque Co. Com'rs*, 1 Morris 31.

The phrase, "and shall have a general supervisory control over all inferior courts," contains a clear grant of power. It is also distinct and separate from the appellate jurisdiction.

This is made manifest by the language used. This clause and the one conferring appellate jurisdiction are co-ordinate, each being independent of the other, neither limiting or qualifying in any way the meaning of the other, and both being qualified to the same extent by the concluding clause, "under such regulations and limitations as may be prescribed by law." Any other view would lead to the conclusion either that the second clause was intended as a mere qualification of the first —which the situation of the clauses in the sentence will not permit; or, that the latter clause is a mere *nudum verbum*— which would be violative of the familiar canon of construction that a statute or constitution must be so construed that every word of it may be made operative, if it is practicable to make it so. (*State ex rel. State Publishing Co.* v. *Hogan*, 22 Mont. 384, 56 Pac. 818; Cooley's Const. Lim. 72; *Hyatt* v. *Allen*, 54 Cal. 353; Story, Const. Law, Sec. 451). A similar clause is found in the constitutions of many of the states of the Union, and, we believe, the courts unanimously agree that the various constitutional conventions used the language purposely to confer a power separate and independent of any other power to meet exigencies to which the ordinary appellate powers of the court are not commensurate. (*Attorney General* v. *Blossom*, 1 Wis. 317; *Attorney General* v. *Chicago & N. W. Ry. Co.*, 35 Wis. 425; *State ex rel. Nat'l. Bank* v. *Johnson*, 103 Wis. 591, 79 N. W. 1081; *Wheeler* v. *Irrigation Co.*, 9 Colo. 248, 11 Pac. 103; *City of Huron* v. *Campbell*, 3 S. Dak. 311, 53 N. W. 182; *Vine* v. *Jones*, 13 S. Dak. 54, 82 N. W. 82; *State ex rel. Moore* v. *Archibald*, 5 N. Dak. 359, 66 N. W. 234; *State ex rel. Murray* v. *Lazarus*, 36 La. Ann. 578; *In re Ingersoll*, 50 La. Ann. 748, 23 South. 889; *Ex parte Croom*, 19 Ala. 561; *People ex rel. Green* v. *Court of Appeals*, (Colo. Sup.) 61 Pac. 592; *People* v. *Richmond*, 16 Colo. 278, 26 Pac. 929). It is well said of this power in the last case cited: "It is hardly necessary to add that the 'superintending control' given by the Constitutional provision now under consideration refers primarily

to courts, not to parties or cases; its purpose is to keep the courts themselves 'within bounds,' and to insure the harmonious working of our judicial system; it was not designed to secure the review of judgments in connection with ordinary appellate jurisdiction; and, in so far as the rights of suitors in particular causes may be affected, the effect is incidental purely. To say that the 'superintending control' was intended to include ordinary appellate power is to render the preceding clauses superfluous in so far as they constitute a grant of such power.''

Nor is this power to be confounded with the other original jurisdiction conferred by the third grant. This clause was examined by this court in *In re MacKnight*, 11 Mont. 126, 27 Pac. 336. In that case the contention was made that the authorization to issue the six writs enumerated was not intended as a grant of original jurisdiction, but that they should be issued in aid of appellate jurisdiction only. It was there pointed out, however, that the argument of counsel was not only inconsistent with the nature of the writs themselves as original writs, always used for certain well-known and well-defined purposes, but that the writs themselves—some of them at least—are wholly unsuited for the performance of the office to which it was sought to limit them. The argument in the opinion as to the well-defined character of these writs and the purposes for which they have ever been used—that is, as original perogative writs—is conclusive as to the character of the power this court should exercise through them, except as to the writ of injunction. This appears to have been intended for some undefined use different from its appropriate function under the old equity practice. The fact that this writ is enumerated with five other writs totally different in their nature and functions, with no appropriate jurisdiction conferred there or elsewhere in the Constitution indicating that it was intended to be used as an aid to jurisdiction, rather than as the foundation of jurisdiction, just as its associates were intended to be used, seems to have escaped the attention of the court entirely. The peculiarity of the provision in including the injunction

in this list of original writs, and the functions thus assigned to it, standing, as it does, divorced from its old associates, is fully considered in *Attorney General* v. *Chicago & N. W. Ry. Co.* 35 Wis. 425. It is there held that it is assigned a new duty, and is to be used as a perogative or *quasi* perogative writ where it is a proper remedy in matters *publici juris* at the instance of the attorney general, but not in suits between private parties. The same was said of all these writs in *Attorney General* v. *Blossom*, 1 Wis. 277, and these cases were followed by Mr. Justice Corliss in *State ex rel. Moore*, v. *Archibald,* 5 N. Dak. 359, 66 N. W. 234. The writ of injunction has heretofore issued from this court as an original writ at the instance of private parties in election cases, as the only suitable remedy, though the propriety of the practice was never settled by express adjudication until the decision in *State ex rel. Clarke* v. *Moran* (at the present term), *ante* p. 433, 63 Pac. 390. (*State ex rel. Woody*, v. *Rotwitt*, 18 Mont. 502, 46 Pac. 370; *State ex rel. Russel*, v. *Tooker*, 18 Mont. 540, 46 Pac. 530; *State ex rel. Metcalf*, v. *Johnson*, 18 Mont. 548, 46 Pac. 533; *State ex rel. McLaughlin*, v. *Bailey*, 18 Mont. 554, 46 Pac. 1116; *State ex rel. Gillis*, v. *Johnson*, 18 Mont. 556, 46 Pac. 440; *State ex rel. Matts*, v. *Reek*, 18 Mont. 557, 46 Pac. 438; *State ex rel. Matts*, v. *Fisher*, 18 Mont. 560, 46 Pac. 1117.) But, whatever may be its legitimate uses, the briefest examination of it and all the other shows that they are intended to be used by this court in its discretion as original writs, each in its appropriate function, and not merely as instrumentalities for the exercise of any other jurisdiction. They are unsuitable as a class for supervisory purposes within the meaning of the provision. All, except the writ of injunction, had well defined uses at the common law, and all, except this and the writ of *quo warranto*, had been in use under the territorial government performing their common-law functions for many years at the time the Constitution was adopted. None of them, except *certiorari* and prohibition, go exclusively to courts, or tribunals, or officers exercising judicial functions. and these two have always been limited to an inquiry into

questions of jurisdiction only. (*State ex rel. King et al.* v. *District Court*, 24 Mont. 494, 62 Pac. 820; *State ex rel. Scharnikow*, v. *Hogan*, 24 Mont. 379, 62 Pac. 493; *State ex rel. Boston & Montana Consol. C. & S. Mining Co.* v. *District Court*, 22 Mont. 220, 56 Pac. 219.) They are in no sense of the term writs suitable for the purpose of correction and revision upon mere errors in procedure. The writ of *habeas corpus* never goes to courts, but to individuals only, to inquire into the legality of the imprisonment complained of. The writ of *quo warranto* also goes to an individual to inquire by what authority he usurps an office or exercises a public franchise. *Mandamus* compels the performance of an act on the part of a tribunal, board, or person which the law enjoins as a duty resulting from an office, trust, or station, but is never used to correct errors merely, or to control discretion. The writ of injunction also goes to persons, and not to courts, whether it be limited to questions *publici juris* or extended to the adjustment of private rights.

While this Court may use any of these writs which are appropriate as aids in the exercise of its other powers, it may not pervert them from their legitimate uses, or restrict their uses to purposes for which they were not intended. The Constitution confers powers to be exercised by them, and we must not prescribe limits where there are none, nor assume authority where none is conferred. We are authorized to issue these writs, in our discretion, for whatever purpose they are suitable, without limitation or qualification. Both the other grants are "under such regulations and limitations as may be prescribed by law." As the appellate jurisdiction was granted for the purpose of revision and correction, and the original jurisdiction under these writs was granted to enable us to render such relief as is appropriate under them, so the supervisory power was granted to meet emergencies to which those other powers and instrumentalities are not commensurate. It is independent of both, and was designed to infringe upon the functions of neither. It has its own appropriate functions, and, without undertaking to define particularly what these

functions are, we think one of them is to enable this court to control the course of litigation in the inferior courts where those courts are proceeding within their jurisdiction, but by a mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate.    Under such circumstances, the case being exigent, no relief could be granted under the other powers of this Court, and a denial of a speedy remedy would be tantamount to a denial of justice.    Cases may arise also where some relief could be granted under some one of the other original writs named, but such relief would not be complete and 'adequate because of some error which could not be corrected by means of the limited functions of the particular writ, while the supervisory power is unlimited in the means at our disposal for its appropriate exercise.

This brings us to the consideration of the question whether the power is dormant, under the restrictions of the clause, "under such regulations and limitations as may be prescribed by law," in the absence of procedure provided by the legislature.    While the legislature cannot decrease the powers granted by the Constitution, this clause evidently intended that that body should provide the mode of procedure to be employed, by which, and the limitations as to time within which, both these powers should be invoked; for, though the power of the court is plenary, it cannot be exercised until a mode for its exercise has been provided. Yet, by this statement we do not concede that the legislature, by failure to act, can render these powers of no avail.    It is a question worth consideration whether, in the absence of action on its part, this Court has the power to establish rules for the exercise of its appellate and supervisory powers.    Some procedure must be provided by which the individual litigent may avail himself of the relief which the Court has power to grant. It is in this sense that an appeal is the creature of the statute, and that the right to it does not exist unless it is provided for. (Hayne on New Trial & App., Sec. 181; *Appeal of Houghton*, 42 Cal. 52).    This holding we believe to be sound, and in con-

formity with the weight of authority. (Story on the Const., Sec. 1773; *In re Petition of Attorney General,* 40 Neb. 402, 58 N. W. 945; Works on Jur. 170; *Teas* v. *Robinson,* 11 Tex. 777; *People* v. *Richmond,* 16 Colo. 274, 26 Pac. 929). By analogy the same observations apply to our supervisory power. But conceding, for the sake of argument, that this Court has no power to proceed in the absence of legislative action, we find ample provision in the Code for the exercise of this power. Section 205 of the Code of Civil Procedure provides: "When jurisdiction is, by the Constitution or this Code, or any other statute, conferred on a court or judicial officer, all the means necessary to carry into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." The legislature having fully provided for appeals, and recognizing the difficulty to be met with in defining the supervisory power and the mode of its exercise, thus left it to this Court upon proper occasion to adopt such means as would seem to it to meet the exigencies of the case; for there is no other jurisdiction vested in this Court for which ample provision is not made either by law or the Constitution itself, and the section is of no significance unless it has reference to the jurisdiction in question. At any rate, the provision is broad enough to cover the exercise of the power, and we hold that, if any legislation is needed, this section is ample to authorize its use in its utmost vigor.

As we have seen, however, the writ of *certiorari* is not a suitable means for the exercise of supervisory control in this case, for the reason that there has been no excess of jurisdiction. This precludes any relief under this writ.. It must be conceded that in *State ex rel. Boston & Montana Consol. C. & S. Mining Co.* v. *District Court,* 22 Mont. 220, 56 Pac. 219, there is an intimation contrary to the view we here take, but the statement in that case containing this intimation is a *dictum,* not necessary nor pertinent to the question there under

discussion.   The question therefore arises:   What is the proper instrument by which to exercise this power?   The only answer is that it must be framed when the case properly arises, and, for want of a better name, may be denominated a supervisory writ.   It must be suitable, not only to examine into questions of jurisdiction, but it must also extend to the review of errors of law and abuses of discretion within the limits of jurisdiction.   Upon the facts of the case presented, the supervisory writ, or one of the others, might be granted, according to the relief to which the applicant might be entitled.   The supervisory writ, being broader in its scope, would afford relief by restraining the inferior court to the bounds of jurisdiction, or compelling a performance of duty, as well as by a correction of errors and abuses of discretion requiring prompt action; but relief under any one of the other writs would be confined to the scope of the particular writ.

In reaching these conclusions we have not overlooked the fact that the courts of many of the states, as appears from the cases cited, have frequently used the writs of *certiorari* and *mandamus* as supervisory writs.   We do not feel inclined to follow them, for this course would, under our view of the well settled functions of these writs in this jurisdiction, be an unauthorized use of them.

It therefore follows that, though the district court may have erred in releasing the witness Ramsey, we have no power to review its action under the writ of *certiorari*, because it was acting within the bounds of its appropriate jurisdiction, and not in excess thereof.

From the foregoing considerations it becomes unnecessary to consider the question whether the notary had power to commit the witness for the alleged contempt.   This question is reserved.   The writ heretofore issued is vacated, and the application is dismissed, at the cost of the relator.

*Dismissed.*