FINLEN, APPELLANT, *v.* HEINZE ET AL., RESPONDENTS.

(No. 1,824.)

(Submitted May 20, 1902. Decided July 21, 1902.)

*Supreme Court—Appellate Jurisdiction—Scope — Legislative Limitation—Final Judgments—Procedure — Interlocutory Judgments—Constitutional Law—Failure of Legislature to Prescribe Procedure—Preservation of Subject of Appeal—Injunction—Jurisdiction of Trial Court—Evidence—Void Orders—Estoppel.*

1. Under Constitution, Art. VIII, secs. 2, 3, conferring appellate jurisdiction upon the supreme court in all cases at law and in equity, under such limitations and regulations as may be prescribed by law, and giving such court power to issue original writs in aid of such jurisdiction, the power of limitation given the legislature does not extend to the right of appeal from final judgments, or to the power of the court on such appeals, but merely to the time when and within which appeals may be taken, to matters of procedure, and to the extent of relief to be granted on appeals from interlocutory orders.

2. Under Constitution, Art. VIII, Secs. 2, 3, conferring appellate jurisdiction on the supreme court "under such regulations as may be prescribed by law," if the legislature fails to provide the necessary appellate procedure, the court may adopt rules for itself in the place thereof.

3. Constitution, Art. VIII, Secs. 2, 3, confer appellate jurisdiction on the supreme court under such limitations as may be prescribed by law, with

authority to issue original writs in aid of such jurisdiction. Code of Civil Procedure, Sec. 21, authorizes such court to affirm, reverse, or modify any judgment or order appealed from. Section 23 authorizes such court to continue in force an injunction or grant an injunction pending an appeal from an order refusing or dissolving an injunction. Sections 1722, 1723, as amended by Acts of 1899, p. 146, enumerate appealable orders, and authorize the supreme court to stay any of the orders so enumerated; and Section 1742 authorizes such court to review on appeal any intermediate order not itself appealable. *Held,* that the statutes do not limit the right of appeal from final judgment, or the power of the supreme court on such appeals, but merely provide for independent appeals from interlocutory judgments and the extent of relief to be granted thereon.

4.    An appellate court has inherent power to preserve the subject of litigation and the status of the parties pending an appeal.

5.    Under Constitution, Art. VIII, Sec. 3, the writ of injunction expressly mentioned is a jurisdictional, prerogative writ, correlative with the writ of *mandamus;* the writ of injunction, used as it ordinarily is as a judicial writ in aid of jurisdiction, and not as a prerogative writ, is one of the writs classed with "other original and remedial writs."

6.    Under Constitution, Art. VIII, Sec. 3, authorizing the supreme court to issue such original and remedial writs as may be necessary to the complete exercise of its appellate jurisdiction, the supreme court may enjoin the operation of a mine, and require it to be preserved in *statu quo* pending an appeal in a case involving the title thereto.

7.    Where, on an appeal to the supreme court involving the title to a mine, it appeared that appellant had no means of ascertaining with certainty from day to day the value of the ores taken out by appellee, who was in exclusive possession; that whatever redress he might obtain would depend upon the testimony of witnesses and the integrity of accounts kept exclusively by appellee; and that the appeal could not be heard in its proper order for at least two years,—an injunction would be granted in aid of the appeal restraining the operation of the mine, and requiring it to be preserved in *statu quo* pending the appeal.

8.    Under Constitution, Art. VIII, Sec. 3, authorizing the supreme court to issue such writs as are necessary in aid of its appellate jurisdiction, the authority to preserve the subject of litigation pending an appeal to such court is exclusively vested in such court from the moment the trial court has entered its final judgment therein, and the trial court has no power whatever to issue an injunction in aid of the appeal.

9.    A decree of a trial court, designed to protect the rights of the parties pending an appeal to the supreme court from a final judgment, being void, does not estop the party at whose instance it is entered from applying to the supreme court for an injunction to preserve such subject pending the appeal.

### ON MOTION FOR REHEARING.

Constitution, Art. VIII, Sec. 3, provides that "the appellate jurisdiction of the supreme court shall extend to all cases at law and in equity, subject, however, to such limitations and regulations as may be prescribed by law." Section 15 declares that writs of error and appeals shall be allowed from the decisions of the said district courts to the supreme court under such regulations as may be prescribed by law." *Held,* that the power of limitation given to the legislature by Section 3 does not authorize it to limit absolutely the appellate jurisdiction of the supreme court, to the extent of cutting off all right of appeal, but merely enables the legislature to enact reasonable regulations as to the time in which and the mode by which an appeal is to be taken.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by Miles Finlen against F. Augustus Heinze and others. From a judgment in favor of defendants, plaintiff appeals, and asks for an injunction to preserve the subject to litigation pending appeal. Injunction granted.

### STATEMENT OF THE CASE.

This is an action in the nature of ejectment, in which the plaintiff seeks to recover possession of the Minnie Healy lode mining claim, situate in the Summit Valley mining district, Silver Bow county, together with damages for ores removed therefrom by the defendants. Pursuant to an application made at the time the action was brought, and after a hearing thereon, the district court issued an injunction to prevent the removal of ore from the property *pendente lite.* The defendants, in their answer, denied that Finlen had any title to or interest in the property, or any right to the possession of it; asserted title in themselves as against him; and demanded a decree against him requiring and directing him to assign to the defendant F. Augustus Heinze certain bonds and leases held by Finlen from the original owners of the claim, the said Heinze claiming to be entitled to such assignment by virtue of an agreement entered into between himself and Finlen, the conditions of which had been fully kept and fulfilled by Heinze. Upon the trial of the cause the district court found upon all the issues in favor of the defendant, and entered a decree accordingly. The decree enjoins the plaintiff from asserting any right to the claim by suit or otherwise, and from interfering in any way with the possession of the defendants. It also contains the following provisions: "It is further ordered, adjudged and decreed that if the plaintiff file herein within five days hereafter an additional undertaking on injunction in favor of the defendants F. Augustus Heinze and the Johnstown Mining Company in the sum of fifteen thousand dollars, which amount may be increased in the discretion of the court, the court retaining jurisdiction

therefor (jurisdiction with reference to the injunction and all matters pertaining thereto being retained by the court on the motion and application of the plaintiff herein), conditioned as required by law, and to pay the said defendants any damages which they may have sustained by reason of the issuance of the restraining order or injunction herein or the continuance thereof, that the temporary injunction herein be continued restraining and enjoining all of the defendants from mining, carrying away or converting to their own use any ores or minerals from said Minnie Healy lode claim until the determination of any appeal which may be taken by the plaintiff to the supreme court from this judgment and decree, or until the further order of this court herein; provided, that said injunction shall not restrain or enjoin said defendants from doing any work or timbering in said claim, or in the openings therein, or the veins belonging thereto, which may be necessary to the proper care and preservation thereof; all ores taken out in doing same to be stored in or on said claim. If said plaintiff shall not give said additional undertaking as herein required, then the said restraining order and injunction shall thereupon be and become vacated and dissolved. It is further ordered, adjudged and decreed that, if the defendants F. Augustus Heinze and the Johnstown Mining Company shall hereafter file herein an undertaking to the plaintiff in the sum of seventy-five thousand dollars, subject to be increased in the discretion of the court, with two or more personal sureties, or with one surety company authorized to do business in the state of Montana, such undertaking to be approved by the judge of this court, and conditioned that said defendants will pay to the plaintiff the net value of all ores which may thereafter and during the pendency of such appeal or until the further order of this court herein be mined, carried away or converted by them from said Minnie Healy lode claim, and also all damages and loss sustained by him by reason of the stay of the restraining order and injunction herein and herein ordered, if it shall be finally adjudged or determined in this action that the plaintiff is entitled to prevail or recover a judgment herein, then said restraining order and in-

junction shall be, and the same is hereby, stayed as against the said defendants until the determination of such appeal by the supreme court, or until the further order of this court herein; and said restraining order and injunction shall not, in that event, operate or be effective, after the giving or approval of the said undertaking, to restrain or enjoin said defendants F. Augustus Heinze or the Johnstown Mining Company from mining, extracting, carrying away, or converting to their own use the ores and minerals from said Minnie Healy lode claim and the veins belonging thereto during the pendency of such appeal, or until the further order of this court made herein with reference to said restraining order and injunction." The plaintiff thereupon appealed from the judgment and decree and from an order denying him a new trial. Upon filing the transcript in this court the plaintiff presented his petition, supported by affidavits, setting forth that the defendants had given the undertaking provided for in the decree; were engaged in mining the property in controversy and removing therefrom and converting to their own use valuable ores to the amount of not less than 400 tons per day; and that, as their mining operations progressed, and as all the valuable ore was removed from the various workings in the property from time to time, the defendants were destroying the said workings in order to prevent the plaintiff from ascertaining the amount and value of the ores removed therefrom in case he should finally obtain a judgment against the defendants in this action. Upon the showing thus made relief is demanded from this court by way of injunction to preserve the property pending a determination of the appeal.

At a hearing had in this court the defendants filed counter affidavits denying all the charges made as to the destruction of the workings in the property, but admitted that they were mining and removing ores as alleged by the plaintiff.

*Mr. W. W. Dixon, Mr. A. J. Shores, Mr. D. Gay Stivers, Messrs. Forbis & Evans,* and *Mr. C. F. Kelley,* for Appellant.

*Messrs. McHatton & Cotter, Messrs. Toole & Bach, Mr. C. R. Leonard,* and *Mr. James M. Denny,* for Respondents.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the court.

The application presents three questions for determination: (1) Whether this court has power to grant the relief demanded; (2) whether, if it has, the facts shown justify its interference; and (3) whether the plaintiff, by asking the trial court to retain jurisdiction of the case for the purpose of protecting the property pending the appeal, has foreclosed his application to this court for that purpose.

1. For answer to the first question reference must be had to the sections of the constitution containing the grant of appellate power to this court, and the provisions of the Code of Civil Procedure enacted in pursuance of them. This grant is contained in Sections 2 and 3 of Article VIII, which declare:

"Sec. 2. The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state, and shall have a general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by law.

"Sec. 3. The appellate jurisdiction of the supreme court shall extend to all cases at law and in equity, subject, however, to such limitations and regulations as may be prescribed by law. Said court shall have power in its discretion to issue and to hear and determine writs of *habeas corpus, mandamus, quo-warranto, certiorari,* prohibition and injunction, and such other original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction.   *   *   *"

The provisions of the Code of Civil Procedure referred to, omitting parts not pertinent to this case, are the following:

"Sec. 21. The supreme court may affirm, reverse or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had.   *   *   *   Its judgment in appealed cases must be remitted to the court from which the appeal was taken."

"Sec. 23. The supreme court may continue in force an in-

junction order made by a district court, or judge, or grant an injunction order and writ pending an appeal to the supreme court from an order of the district court, or judge, refusing or dissolving an injunction, upon such terms and under such rules as the supreme court may establish. No action to obtain an injunction must be commenced in the supreme court, except in cases where the state is a party, or in which the public is interested, or the rights of the public are involved, but the proper district court has jurisdiction of all injunctions, and the commencement of all actions therefor, except as in this section provided."

Reference must be had also to Sections 1722 and 1723, as amended by the Act of the legislative assembly of 1899 (page 146). These enumerate the judgments and orders from which appeals lie, and provide when they may be taken. Subdivision 2 of the former provides that this court, or any one of its justices, may stay any of the orders enumerated therein.

The defendants argue that the constitutional grant of appellate power also expressly authorizes the legislature to impose limitations upon it, and to provide regulations under which it may be exercised, and that, as these statutory limitations and regulations have been enacted by the legislature, this court must look to them exclusively for authority to act upon this and all similar applications through which relief is sought pending an appeal. In other words, Section 21, *supra,* only authorizes the court upon final hearing to affirm, reverse or modify a judgment or order of the trial court. Section 23 permits this court to issue an injunction when one has been refused by the district court, or to continue one in force which has been dissolved. Section 1722 authorizes the grant of a stay of any of the interlocutory orders enumerated when such relief is appropriate. It therefore follows, from an application of the principle *"expressio unius est exclusio alterius,"* that this court can grant no other relief in aid of its appellate jurisdiction than that permitted by these specific statutory provisions. We cannot assent to the proposition that the legislature can thus limit and control the power vested in this court by the constitution, or that it has attempted to do so by the enactment of any of these provisions.

It is manifest from the language of this instrument that it was the intention of its framers that the power of review granted should extend to all cases. The words "the appellate jurisdiction of the supreme court extends to all cases at law and in equity" are of universal application, and must be construed to mean that the parties litigant have the right of appeal to this court for final review of the action of the trial court, whatever it is, and that this court has the power to grant such relief as this review implies. It is a grant of power to this court, and at the same time a guaranty of a right to the individual citizen which is independent of legislative control, except in a qualified sense. In considering the character and extent of the appellate and supervisory powers granted by the sections quoted, and the limitations placed upon them by the expression "under such regulations and limitations as may be prescribed by law," this court, in *State ex rel. Whiteside* v. *First Judicial District Court,* 24 Mont. 539, 63 Pac. 395, said: "While the legislature cannot decrease the powers granted by the constitution, this clause evidently intended that that body should provide the mode of procedure to be employed by which, and the limitations as to time within which, both these powers should be invoked; for, though the power of the court is plenary, it cannot be exercised until a mode for its exercise has been provided. Yet by this statement we do not concede that the legislature, by failing to act, can render these powers of no avail. It is a question worth consideration whether, in the absence of action on its part, this court has the power to establish rules for the exercise of its appellate and supervisory powers. Some procedure must be provided by which the individual litigant may avail himself of the relief which the court has power to grant. It is in this sense that an appeal is the creature of the statute, and that the right to it does not exist unless it is provided for." By this language we meant to intimate an opinion that the power to consider appeals to this court from final judgments in all cases is a constitutional power, and that, in the absence of suitable action by the legislature providing the necessary procedure, the

power is not held in abeyance, but may nevertheless be exercised under suitable rules provided by this court.

The clause, "subject to such limitations and regulations as may be prescribed by law," contained in Section 3,—a substantial equivalent of the limitation clause in Section 2,—must be read in connection with the preceding clause, which embodies the grant, and such import be given to it as will permit the court to retain the power vested in it, as a distinct department of the government, with its own peculiar and appropriate functions, and at the same time preserve the right guarantied to the litigant. The word "limitations," in its ordinary legal and popular sense, refers to the time within which an action may be brought, or some act done, to preserve a right. In this sense it implies power in the legislature to enact reasonable provisions fixing a limit to the time within which an appeal from a final judgment may be prosecuted. This the legislature has done in the enactment of Section 1723, *supra*, after recognizing the right of appeal in Subdivision 1 of Section 1722. But we think that, as here used, the term has a somewhat broader meaning. It refers also to the power of the legislature to provide for appeals from interlocutory or intermediate orders and decisions, and, in its discretion, to direct that such appeals shall be taken and entertained prior to final judgment, and that, unless they are so taken, the court may not review such orders upon appeal from the final judgment. This has been done by the provisions contained in Subdivision 2 of Section 1722, Subdivision 3 of Section 1723, and Section 1742; for the first two sections enumerate the interlocutory orders from which appeals lie, and fix the time in which they may be taken, while the latter declares that upon appeal from a final judgment the court "may review * * * any intermediate order or decision excepted to, which involves the merits, or necessarily affects the judgment," except one from which an appeal might have been taken. Necessarily, the grant of the power to the legislature to provide for appeals from interlocutory orders implies the power to withhold the right to them. These provisions, taken together, are limitations not only as to the time within

which, after the making of the particular judgment or order, the appeal may be prosecuted, but also, in case of intermediate and interlocutory orders and decisions, as to the time in the course of the litigation at which the proceedings for review must be instituted. Thus indirectly, and by the substitution of another time at which, and a different mode by which, the review may be had, they further limit the extent of relief which the court may grant upon appeal from a final judgment. But, though this is true, the power of limitation by the legislature applies primarily to the time within which the power of this court may be invoked by the litigant. It is only in this sense that the legislature may impose limitations, and these limitations, whatever they may be, may not restrict the right of the litigant to have every order in the case affecting the merits reviewed either upon appeal from the final judgment or during the progress of the case, and within a reasonable time after the particular order is made; nor may they restrict the power of the court to grant such review.

So the word "regulations" refers to the establishment of the procedure by means of which the power may be set in motion, and in obedience to which it may be exercised. It is only in this qualified sense that an appeal from a final judgment is a creature of the statute. Appeals from interlocutory or intermediate orders, as a special and independent method of obtaining relief, are not based upon a constitutional guaranty. They are, therefore, subject to just such limitations, both as to the particular class or classes of orders from which they lie, and as to the time in which they may be taken, as well as to the extent of the relief which may be granted, as the legislature may impose. The legislature may also regulate the procedure to be observed, and the rules provided by it must be the exclusive guide. In this sense these appeals are exclusively creatures of the statute. We do not mean to say that the legislature may, by unreasonable limitations and regulations, or by nonaction, destroy or render ineffective the power of this court to review interlocutory orders; for, notwithstanding independent appeals from them may not be provided for, errors in making them may be

reviewed upon appeal from the final judgment in the case, or by *certiorari,* according as one or the other method is appropriate, provided always that review upon appeal extends only to such orders and decisions as are excepted to by the party aggrieved and such exception is properly preserved.

None of the provisions of the statute, *supra,* nor any others, undertake to limit the auxiliary powers of this court upon appeal from a final judgment. All of the sections cited, except Section 21, in so far as they attempt to fix limitations beyond those already noticed as to the matter of time and the mode of procedure, refer exclusively to appeals from interlocutory orders and orders made after final judgment, and the relief which may be granted in aid of them. Section 21 does not undertake to fix any limit upon them, but merely declares the extent of relief which can be granted upon final hearing under the sections of the constitution quoted as construed by this court in the light of the circumstances existing at the date of its adoption. (*State ex rel. Whiteside* v. *First Judicial District Court, supra.*) The extent of the relief granted upon final review, in so far as this provision may be considered a legislative limitation upon it, would be just the same had it never been enacted. It follows, therefore, that, except to provide independent appeals from interlocutory orders, and to deny any other mode of review of them, the legislature has not limited in any way the extent of the power of this court upon appeals from final judgments. Nor do we think such limitations would be valid, or effective for any purpose, should any such be enacted.

We do not deem anything said herein to be in conflict with the views expressed in the two cases recently decided by this court under the title *Maloney et al.* v. *King et al.,* 26 Mont. 487, 492, 68 Pac. 1012, 1014. The first of these cases involved the question whether this court, under the provisions of Article VIII, Sec. 3 of the Constitution, and of Sections 1722 and 1723 of the Code of Civil Procedure, *supra,* has the power to suspend the operation of an interlocutory injunction pending an appeal from an order granting it. It was held, among other things, that it is not necessary to the complete exercise of appel-

late jurisdiction that the order be modified, vacated or rendered dormant while the appeal is pending. In the second case it was held, among other things, that upon an appeal from a final judgment directing a perpetual injunction to issue, this court is not authorized by Section 23, or by Sections 1722 and 1723, *supra,* or any other provision of law, to stay the operation of the injunction pending the appeal, since these statutes apply to interlocutory injunctions only, and have no reference to suspending or staying the operation of a final decree. It was held, also, that no power was conferred by the constitution to suspend the order or judgment pending the appeal. In neither of these cases was it sought to have the subject of the controversy protected and preserved until the appeal could be disposed of. In the case of *Bordeaux* v. *Bordeaux,* 26 Mont. 533, 69 Pac. 103, this court was asked to grant the appellant temporary alimony and suit money pending her appeal from a judgment of divorce. The application was denied on the ground that it sought to invoke the exercise of original jurisdiction in a divorce case, and that under the constitution this court was not vested with such jurisdiction. The relief sought in the case at bar is not a suspension of the judgment of the district court, nor the exercise of any original power. It is sought to preserve the property pending the appeal, leaving the judgment in force until its integrity can be determined, and the rights of the respective parties finally adjudicated.

Appellate jurisdiction also implies all the power and instrumentalities necessary to make effective the ultimate relief sought. This follows from the grant itself without other express provision, for "it is an established doctrine that one of the essential attributes of appellate jurisdiction, and one of the inherent powers of an appellate court, is the right to make use of all the writs known to the common law, and, if necessary, to invent new writs or proceedings in order to suitably exercise the jurisdiction conferred." (*Wheeler* v. *Northern Colorado Irrigation Co.,* 9 Colo. 248, 11 Pac. 103.) This language was quoted with approval in *State ex rel. Whiteside* v. *First Judicial District Court, supra,* and we deemed it an expression of

the correct rule. If, pending the appeal, the subject of the litigation could not be preserved, and the appellant could be left in such a position that, though he should prevail in his appeal, and be finally successful in the litigation, he could not enjoy the fruits of his victory, the right of appeal would have no substantial value, but would be one in name only. This court therefore must, of necessity, and in the nature of things, possess inherently whatever power may be necessary to preserve the subject of the litigation and the status of the parties pending the appeal. (*Pennsylvania R. Co.* v. *National Docks & N. J. J. C. Ry. Co.*, 54 N. J. Eq. 647, 35 Atl. 433.) The constitutional convention, recognizing this necessity, after giving to the court expressly the power in its discretion to issue and to hear and determine the six writs enumerated, also gave the power to issue, hear and determine all other original and remedial writs necessary to the complete exercise of its jurisdiction, so that no doubt or embarrassment might exist as to the means at its command for this purpose. (*State ex rel. Whiteside* v. *First Judicial District Court, supra.*) The original writs may, therefore, be used for any purpose for which they are appropriate; and the others, whatever they may be, may be used in the same way in aid of the appellate jurisdiction. The writ of injunction has been assigned by this court to the performance of prerogative functions as the equity arm of the court's original jurisdiction, and as correlative with the writ of *mandamus,* to restrain excesses, just as the latter is used to supply defects and to compel action. (*State ex rel. Clarke* v. *Moran,* 24 Mont. 433, 63 Pac. 390.) What is said of it, however, applies to it as a jurisdictional writ, the use of which is not subject to restriction or control by the legislature, but is lodged in the discretion of this court, to be used for whatever purpose it may be appropriate, in the protection of the sovereignty of the state, its franchises or prerogatives, or the liberties of the people. The writ of injunction, used as it ordinarily is, as a judicial writ, in aid of jurisdiction, and not as a prerogative writ, is one of the writs properly classed with "other original and re-

medial writs," and is every way suitable to be used in the exercise of the auxiliary power now invoked.

2. Having reached the conclusion that this court has power to grant the relief demanded, the next inquiry is, do the facts presented upon the hearing justify interference? Touching the affidavits tending to show wanton destruction of the workings in the property by defendants, we think them so overwhelmingly rebutted by the counter affidavits that they are not worth consideration. It is admitted, however, that the defendants have extensive workings in the claim, and that they are pushing forward their operations with a large force of men; that they are removing from it and converting to their own use about 400 tons of ore per day, and that this is of great value. Under the view we take of the attempt by the district court to retain jurisdiction pending the appeal, the plaintiff has no security against loss, in case he should finally prevail in the litigation, other than the pecuniary responsibility of the defendants. Even if they are and remain solvent, he has no means of ascertaining with certainty from day to day the value and amount of the ores taken out and converted by them. Whatever redress he might obtain would, therefore, depend upon the testimony of witnesses, and the integrity of the accounts kept exclusively by defendants. It will be at least two years before the appeal can be heard by this court, if it is taken up in its proper order. By that time the mine will be in a great measure exhausted. The sole value of the estate will thus be greatly diminished. These facts present a case which appeal so strongly to our discretion that we think a refusal of the relief demanded would be denial of justice. To grant it would be simply to preserve the property, and allow it to stand as it is, until it is finally determined who is the lawful owner of it. To deny it would be to permit the estate to be destroyed, and drive the plaintiff, if finally successful, to pursue remedies for redress wholly different from that of which he seeks to avail himself in the present litigation.

These observations are founded exclusively upon the showing now made to this court. We have not looked into the merits of the case, nor are we to be understood as having prejudged them

in the slightest degree. The ultimate fact that the property involved would certainly be destroyed pending an appeal to this court in a controversy involving the title, so that the complaining party would practically be defeated, though he should finally prevail, is a sufficient ground for relief, whatever the merits of the controversy may be, it appearing from the assignments of error that the questions involved are important and doubtful, and that the appeal is prosecuted in good faith.

3. Much contention is made by the defendants in support of the view that, inasmuch as the decree shows upon its face that the trial court, at plaintiff's instance, retained jurisdiction of the cause pending the appeal, for the purpose of protecting the subject of the litigation, the plaintiff may not be heard in this court upon this application. On the other hand, plaintiff contends that the recital in the decree is false, that it is not founded upon any suggestion made by him to the trial court, and that it was inserted by the trial court, without authority or facts to support it, by way of an amendment to the original decree, more than six months after the latter was regularly entered. We shall not now consider what power the district court has to amend its final judgment or decree more than six months after it has been regularly entered, or what evidence is necessary to support such amendment. In our opinion, the particular amendment in question was wholly unauthorized, no matter at whose instance it was made, or what evidence there was tending to show that the matter contained in the amendment was in fact a part of the decree as rendered in the first instance. When that court rendered its final judgment at the conclusion of the case settling the rights of the parties, its jurisdiction over the subject-matter and the parties ceased, except for the purpose of entertaining a motion for a new trial, or such other proceedings as might properly and lawfully be had looking to a revision or correction of its action, or to enforce the decree as rendered. It had no authority, inherently or by statute, or by any rule of this court, to retain jurisdiction for any purpose pending the appeal. Upon appeal from a final judgment, after the motion for a new trial has been disposed of,

jurisdiction over the subject-matter involved and the parties to grant an injunction or other appropriate relief pending the appeal is vested in this court. To preserve and protect the property so that at the end of the controversy in this court it may be in the same situation it was at the time this court obtained jurisdiction over it, is solely and exclusively the office and duty of this court. It is a necessary incident to its appellate power, whether expressly conferred by the constitution or not, unless withheld by express provision of that instrument. Under Section 3, cited *supra,* the power is expressly confided to our discretion to issue, hear and determine any writ which may be deemed necessary to the complete exercise of this power. To protect and preserve the rights of the parties is a power absolutely necessary in aid of this jurisdiction. It being lodged in our discretion, without limitation or restriction, the district court has no power to take it away, and is therefore without authority to act in the premises in any way whatever. The fact that it has undertaken to do so at the instance of plaintiff—and for present purposes we assume it to be a fact—does not alter the situation. A judgment or order rendered without jurisdiction of the subject-matter is wholly unauthorized and void, and does not estop any person from questioning its validity whenever it suits his purpose to do so, whether such person be a party to it or not.

It is therefore ordered that an injunction issue requiring the defendants to refrain from mining or removing any ores from the Minnie Healy claim pending the appeal herein, or until the further order of this court; provided that before the same shall issue the plaintiff shall file with the clerk of this court an undertaking in the sum of $300,000, with at least two good and sufficient sureties for the full amount of the penalty thereof, the same to be conditioned as is provided by law in such cases, the sureties to be approved by the clerk of this court; and provided, further, that the defendants may do whatever work may be necessary to preserve the property during the pendency of the appeal.

*Writ granted.*

ON MOTION FOR REHEARING.

(Submitted July 28, 1902. Decided August 4, 1902.) .

27 123
28 460
28 464

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Immediately after the original opinion was filed in this cause, in July of this year, counsel for the defendants filed a motion for a rehearing. This motion was, after argument and further consideration of the questions involved, denied; MR. JUSTICE MILBURN dissenting. The time for the summer vacation having arrived, it was not practicable for the court to reduce to writing additional reasons in support of the conclusions announced in the former opinion. While a majority of the court deemed the reasons for its action upon the motion already sufficiently stated, it was thought advisable, when the court convened again, to elaborate them in certain respects, in order to dispose of suggestions made upon the argument of the motion, as well as to call attention to matters not theretofore adverted to.

1. It was earnestly and plausibly argued by counsel that it was the intention of the constitutional convention, as shown by the use of the clause, "subject, however, to such limitation" and regulations as may be prescribed by law" (Constitution, Article VIII, Section 3), to grant to the legislature the power to limit absolutely the appellate jurisdiction of this court, even to the extent of cutting off the right of appeal in all cases, if it should so desire. This result, they say, follows from the usual and ordinary definition of the word "limitation," namely: "The act of bounding or circumscribing; the fixing of a limit or restriction."

It is the duty of this court to interpret the constitution in its entirety, and to endeavor to discover what its meaning is as a whole; giving to each word and phrase the definition which will make it consistent and harmonious with other words and phrases contained in it upon the same subject; exercising the utmost care

not to impose restrictions where none were intended, nor to enlarge the meaning in any particular so as to effect results, or make it confer powers, not contemplated by its framers. This must be done by a study of the language employed, giving to each word its ordinary signification, unless it is apparent that it is used in some special or different sense. Reference may also be had to the history of our judicial system, and the conditions existing at the time the constitution was adopted.

In the former opinion the clause in question was held not to be open to the interpretation contended for by the defendants, for the reason that it must be construed in connection with the grant of appellate power contained in the preceding clause, and such a meaning given to it as will permit both to stand. We did not deem it possible that the convention intended itself to be understood as granting plenary appellate jurisdiction to this court, coupled with a right impliedly reserved to the citizen to invoke it, and at the same to declare that the jurisdiction should be used or the right exercised only at the option and by the express permission of the legislative assembly. That this was not the intention is manifest from the provision contained in Section 15 of the same Article, which declares: "Writs of error and appeals shall be allowed from the decisions of the said district courts to the supreme court under such regulations as may be prescribed by law." It will be noted that the expression is, "the decisions;" that is, all the decisions. There is no limitation whatever as to any particular character of decision, but the expression includes every decision, of whatever character. Certainly, this must be construed in the light of the conditions and exceptions existing at the time the constitution was formulated and adopted; but this court is not permitted to go further, and give an import to the language of Section 3, *supra,* which would practically destroy the import of the clear statement contained in Section 15, quoted. This latter seems to have been inserted *ex industria* to give scope and meaning to the limitation clause, so that there could be no mistake as to its intended signification. If the contention of the defendants should be sustained, then the powers of this court, except its power under

the six original writs enumerated in Section 3, would be held in abeyance until the legislature should choose to grant it permission to exercise them. This would, of course, be of no moment, were it clear from any express declaration that such was the intention of the convention; but there being no such expressly declared intention, and the declaration contained in Section 15 being inconsistent with such a purpose, we were constrained to adopt and adhere to the interpretation given to the limitation clause contained in Section 3. We are confirmed in this view by an examination of the Organic Act creating the territorial judicial system, after which our present system was modeled in several particulars, and of the decisions which have discussed and defined the jurisdiction of the appellate court established thereby. Section 9 of this Act declares "that the judicial power of said territory shall be vested in a supreme court, district courts, probate courts, and in justices of the peace." Then, after providing for the organization of the supreme and district courts, it proceeds: "The jurisdiction of the several courts herein provided for, both appellate and original, and that of probate courts and of justices of the peace shall be limited by law: provided, that   *   *   *   said supreme and district courts respectively shall possess chancery as well as common law jurisdiction." Then follows the further provision: "Writs of error, bills of exception, and appeals shall be allowed in all cases from the final decisions of said district courts to the supreme court, under such regulations as may be prescribed by law." It requires but a cursory examination of these provisions to induce the conclusion that the constitutional convention, in formulating Sections 3 and 15, *supra,* had them in mind, and intended to embody them as nearly as might be in the organic law of our state, so that upon the change to statehood there might be as little departure as possible from the system already established. It would seem that the clause declaring that the appellate jurisdiction of the supreme court should be limited by law was a sufficient warrant to the legislature to declare that in certain cases appeals should not lie; yet the territorial supreme court (*Payne* v. *Davis,* 2 Mont. 381) held, in considering

this provision, that it conferred no power to take away the right of appeal in any case. After referring to the language last above quoted, the court said: "Under this provision, the legislative assembly has the power to define the mode and manner of the proceedings by which appeals can be taken to this court. But it has no authority to limit the appellate jurisdiction of this court, and deprive any party of his right to be heard on appeal in any case." And this view is entirely in accord with that stated by the supreme court of the United States in *Ferris* v. *Higley,* 20 Wall. 375, 22 L. Ed. 383, wherein that court held that these provisions did not authorize legislation which limited or impaired the jurisdiction of the territorial supreme or district courts. See, also, *Gallagher* v. *Basey,* 1 Mont. 462; *Chumasero* v. *Potts,* 2 Mont. 242; *U. S.* v. *Ensign,* 2 Mont. 401; *Kleinschmidt* v. *McAndrews,* 4 Mont. 32. This court has heretofore, and since the adoption of the constitution, declared substantially the same conclusions. In *Lloyd* v. *Sullivan,* 9 Mont. 577, 24 Pac. 218,—a case which arose after the establishment of the state government,—an appeal was taken by the plaintiff in an election contest from an order denying him a new trial. It was contended by the respondent that the appeal did not lie. The statute did not in express terms permit an appeal in such cases, but did allow, generally, appeals from orders denying new trials. The court overruled the contention, however,—citing *Payne* v. *Davis, supra,*—and held that these constitutional provisions, when construed together, extended the appellate jurisdiction of this court to all cases, actions, and proceedings which have finally been decided by the district court, including an appeal from an order denying a motion for a new trial in an election contest, and that the right thus guarantied is a substantial one.

It thus becomes clear that parties litigant have the right of appeal from all the decisions made in the progress of the case, and that this court has jurisdiction to hear and determine them, subject only to such reasonable limitations and regulations as the legislature may enact affecting the time within which and the mode by which the appeal may be taken. The only exceptions to this broad statement of the rule are judgments in con-

tempt, and perhaps orders made in a few summary proceedings, in which appeals were not allowed under the Organic Act, and may therefore be deemed to have been impliedly excepted from the general provisions of the constitution.

The cases cited by counsel, such as *U. S.* v. *More,* 3 Cranch, 172, 2 L. Ed. 397; *Durousseau* v. *U. S.,* 6 Cranch, 312, 3 L. Ed. 232; *Wiscart* v. *Dauchy,* 3 Dall. 327, 1 L. Ed. 619; *Robinson* v. *Baillieul,* 2 Tex. 161; *Yarbrough* v. *State, Id.* 526; and *State* v. *Daugherty,* 5 Tex. 3,—and similar cases, being based upon different constitutional provisions, do not apply.

2.    Counsel insisted that this court was in error in declaring that the appeal was taken in good faith, and in basing this declaration upon the statement "that the same appears from the assignment of errors." In determining whether the plaintiff was entitled to the relief demanded pending the appeal, reference must, of necessity, be had to the assignments of error and the record, in order to determine whether the appeal was taken in good faith. Of course, this court did not wish to be understood as having confined its preliminary examination of the record to the list of errors assigned therein, without looking further, to see if there were matters in the record upon which the assignments were predicated. This the court did; and having found that such was the case, and that important and doubtful questions were raised, and, further, that a correct solution of them would require a careful investigation of the authorities, it was thought that a sufficient case was made out to authorize the issuance of the writ, to prevent the partial or total destruction of the estate involved before the appeal could finally be reached and disposed of.

3.    Much was said in the argument to the effect that, whatever powers this court has under the constitution, it has no power to reverse or modify, upon an application of this character, the judgment rendered upon the merits by the district court. This the court did not do; nor is this the effect of the relief granted. That judgment stands as rendered, without modification, and will remain in full force until reversed, modified, or affirmed upon a final hearing. The only effect of the writ is,

and will be, to preserve the mine until the disposition of the appeal.

For these additional reasons, we were, and still are, of the opinion that the writ was properly issued, and that the motion for a rehearing should be denied.

*Motion denied.*

MR. JUSTICE MILBURN: I dissented from the order denying the motion for another hearing, because I desired to hear further argument. The briefs of counsel in support of the motion were such as to cause me to think that I might have been mistaken in the decision at which I arrived in the case, and I was willing to grant a rehearing, although the argument of the counsel in said briefs did not convince me that I had arrived at a wrong conclusion.