Congress Cigar Co., Inc., demandante y apelada, *v.* Angelina Grau Sandoval y Josefa Sandoval Vda. de Grau, demandadas y apelantes.

No. 5672.—*Sometido:* Enero 25, 1933. *Resuelto:* Marzo 15, 1933.

*Antonio Reyes Delgado,* abogado de las apelantes; *V. Polanco de Jesús,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

La presente es una acción sobre rescisión de contrato en la cual se alega substancialmente que la demandada Josefa Sandoval viuda de Grau es madre de la otra demandada Angelina Grau Sandoval; que el día 22 de septiembre de 1926 la demandante otorgó un contrato con Josefa Sandoval sobre siembra, cultivo y refacción de tabaco, por virtud del cual la demandada antes dicha se comprometió a sembrar y cultivar veinte cuerdas de terreno de tabaco en una finca de su pertenencia y por su parte la demandante se comprometió a otorgarle un crédito hasta la suma de $1,500, el cual ven-

cería en 30 de junio de 1927, y que habiendo la susodicha demandada agotado el crédito, se amplió dicho contrato, en 28 de marzo de 1927, por $1,000 más; que para abril de 1927 la lluvia causó grandes daños en la plantación de tabaco de Josefa Sandoval, refaccionada por la demandante, deján- dola en tal estado que podía precisarse que no rendiría lo suficiente para satisfacer la acreencia de la demandante, y en tal estado, ambas demandadas, madre e hija, se pusieron de cuerdo para defraudar a la demandante, y a tal efecto Josefa Sandoval traspasó a su hija Angelina Grau Sandoval todos los bienes de su pertenencia, entre ellos la finca refac- cionada; que el traspaso verificado por Josefa Sandoval a su hija Angelina Grau se contrajo a los derechos de condo- minio que sobre dichas fincas ostentaba la señora Sandoval haciéndose aparecer el traspaso por la cantidad de $3,000, confesando la vendedora haber recibido con anterioridad al acto $1,000, y dando fe el Notario de que en el acto del otor- gamiento de la escritura se pagaron los $2,000 restantes; que el recibo por parte de Josefa Sandoval de la mencionada suma es falso, porque la Señora Sandoval no recibió los $1,000 con anterioridad al otorgamiento de la escritura, y los $2,000 que figuraron en dicho otorgamiento fueron facilitados a Angelina Grau por parientes y amigos con el fin de simular una compra; que la compradora Angelina Grau era antes de la fecha de dicha adquisición insolvente y además tenía cono- cimiento de los negocios de su madre y sabía que ésta era deudora de la demandante por razón de los contratos de refacción y a pesar de ello se prestó a servir de compradora en la escritura de traspaso; que el 30 de junio de 1927 se liquidó el contrato de refacción por la demandante de con- formidad con la señora Sandoval resultando un saldo a favor de aquélla de $1,671.06 y por dicha suma la demandante radicó demanda ante la Corte de Distrito de Arecibo, obte- niendo sentencia condenando a Josefa Sandoval a su pago; que en el contrato de refacción otorgado entre la demandante y Josefa Sandoval figuró como fiador solidario Félix Rodrí-

guez, pero éste quedó insolvente a la fecha del vencimiento del contrato y es actualmente insolvente; que la demandante no tiene otros medios de cobrar lo que se le adeuda que no sea solicitando la rescisión del contrato celebrado entre Josefa Sandoval viuda de Grau y su hija Angelina Grau Sandoval.

A dicha demanda contestaron las demandadas alegando que la misma no aduce hechos suficientes para constituir la causa de acción que se ejercita, aceptando el otorgamiento del contrato de refacción entre Josefa Sandoval y la demandante, así como la ampliación del mismo, y negando la simulación del traspaso de los bienes de la demandada Josefa Sandoval a su hija Angelina Grau, y que ésta tuviera conocimiento de que su referida madre estuviese endeudada con la demandante, alegándose en contrario que la Srta. Grau Sandoval real y positivamente pagó por los bienes litigados las sumas que se dicen en la escritura de 10 de mayo de 1927.

La Corte de Distrito de Arecibo dictó sentencia declarando rescindido el contrato de compraventa a que se refiere la demanda, con imposición de costas a las demandadas, sin incluir honorarios de abogado. Se alega por las demandadas y apelantes que la corte inferior erró al desestimar la excepción que se interpuso alegando que la demanda no aduce hechos suficientes para determinar una causa de acción. Se ejercita en este caso una acción de rescisión de contrato de acuerdo con el inciso tercero del artículo 1258 del Código Civil, según el cual son rescindibles los contratos celebrados en fraude de acreedores, cuando éstos no pueden de otro modo cobrar lo que se les debe. En el caso de *Sucn. de Almazán* v. *López et al.*, 20 D.P.R. 537, 540, este tribunal ha declarado que en una acción de esta naturaleza debe alegarse que el demandado es realmente deudor del demandante, que el demandado enajenó sus bienes en fraude de su acreedor, que el demandante ha sido perjudicado por tal enajenación y que el demandante no tiene otro recurso legal para obtener la reparación del perjuicio sufrido que pedir la rescisión del contrato de enajenación.

■ Se llama la atención por las apelantes a determinadas alegaciones de la demanda que a su juicio entrañan conclusiones e inferencias legales. Se pone énfasis en el uso de la palabra insolvencia que, a juicio de las apelantes, es una conclusión y se dice que no se ha alegado en debida forma la insolvencia de la demandada Josefa Sandoval y de su fiador Félix Rodríguez. Dispone el artículo 1261 de nuestro Código Civil que la acción de rescisión es subsidiaria y no puede ejercitarse sino cuando el perjudicado carezca de todo otro recurso legal. El Tribunal Supremo de España ha declarado que si el artículo 1294, equivalente al 1261 de nuestro código, califica de subsidiaria la acción rescisoria, no es porque carezca de la condición de una acción principal subsistente por sí e independiente de otra que hubiera de ejercitarse de antemano, sino en el sentido que en el mismo texto se expresa, de no poderse ejercitar cuando el perjudicado tuviese a su disposición otro medio legal para obtener la reparación del perjuicio. (Sentencia de 9 de noviembre de 1901.) El ejercicio de esta acción está subordinado a la existencia de bienes en poder del deudor o de su fiador, si bien, como dice Manresa, "tales obstáculos a la acción rescisoria dejarán de serlo cuando los bienes o las garantías no bastaren notoriamente a la efectividad del crédito reclamado. La realidad del perjuicio", continúa diciendo el mismo comentarista, "se aprecia por la imposibilidad del pago, la cual no puede entenderse absoluta, según explicaremos al determinar el sentido de la palabra insolvencia con motivo del artículo siguiente." Esto dice Manresa comentando el artículo 1291 del Código Civil español, y al comentar el artículo siguiente nos dice que "la insolvencia, que no es la miseria, ni se opone a la ostentación de que haga alarde un deudor, no es tampoco incompatible con que éste conserve algunos recursos reconocidos, si después de las enajenaciones o pagos hechos, son aquéllos notoriamente insuficientes con relación a las obligaciones que sobre el interesado pesen." 8 Manresa, 697.

En el presente caso se alega en la demanda que Josefa Sandoval, puesta de acuerdo con su hija, con el propósito de defraudar a la demandante y de aparecer insolvente, traspasó a su referida hija todos sus bienes que eran los que tenía en la jurisdicción de Morovis. Entendemos que esta alegación es bastante para demostrar la insolvencia de la demandada Josefa Sandoval. En cuanto a su fiador Félix Rodríguez, se alega que era insolvente en la fecha del vencimiento del contrato, que lo es actualmente, y que la demandante no tiene otro medio de cobrar su cuenta como no sea con la rescisión del mencionado contrato. Las apelantes sostienen que es ésta una mera conclusión y que han debido alegarse hechos de los cuales surja la insolvencia de la demandada Josefa Sandoval y su fiador. La palabra *insolvencia* revela un estado de hecho que no puede escapar a la penetración de ninguna persona de inteligencia común.

En el caso de *City of Indianapolis* v. *Mitchell,* 61 N. E. 947, resuelto por la Corte Suprema de Indiana, se consideró suficiente la alegación de que el deudor era insolvente, sin acompañarla de la acostumbrada alegación de que dicho deudor no tiene ni tenía propiedad sujeta a ejecución. En este caso la corte dijo:

"Se alega además que Fred Lammert era insolvente después del traspaso y cuando se inició la acción. Se ha sostenido desde hace mucho tiempo que una alegación al efecto de que el deudor no tuvo al tiempo del traspaso ni ha tenido desde entonces propiedad suficiente sujeta a ejecución para pagar sus deudas o cualquier parte de las mismas, constituye una suficiente alegación de insolvencia. La insolvencia es el hecho fundamental en controversia y la ausencia de propiedad sujeta a ejecución demuestra la existencia de tal condición. La alegación de que el deudor era completamente insolvente es, por lo tanto, suficiente, sin el aditamento usual de que él no tiene ni tenía propiedad sujeta a ejecución. Si hubiese alguna duda respecto al establecimiento de este principio, quedaría disipada citando un número de casos análogos. La alegación de que el firmante de un pagaré era completamente insolvente ha sido siempre reconocida como una afirmación de un hecho en acciones contra los endosantes. Es una regla firmemente establecida que una alegación al efecto de que

el deudor no tenía y no tiene propiedad sujeta a ejecución es bastante en acciones para anular traspasos fraudulentos. La insolvencia puede alegarse en esta forma o expresamente, como se ha dicho aquí.''

En el caso de *Grunsfeld Bros.* v. *Brownell,* 76 Pac. 310, la Corte Suprema de Nuevo Méjico se expresó así:

''El hecho octavo de la demanda alega que el demandado D. R. Brownell es insolvente, y nos parece a nosotros, que esto es una alegación de que Brownell no tenía propiedad bastante para pagar sus deudas. La palabra insolvencia, según se usa en las leyes de quiebra e insolvencia, significa la inhabilidad de una persona para pagar sus deudas cuando vencen en el curso ordinario de los negocios; pero en su sentido general significa un exceso sustancial de responsabilidades personales sobre el valor efectivo de su propiedad.''

En el caso de *Tainter* v. *Broderick Land & Investment Co.,* 171 Pac. 679, resuelto por la Corte Suprema de California, se resolvió que una alegación de que el demandado es insolvente se refiere al tiempo del comienzo de la acción y no demuestra insolvencia al tiempo del traspaso. ''No hay alegación,'' dice la corte, ''de que Dudley era insolvente o estaba en peligro de insolvencia al tiempo del traspaso. Claramente se ve que la corte considera que es suficiente una alegación en que se diga que el deudor era insolvente al tiempo de la trasmisión de la propiedad.''

En el presente caso se alegó que el fiador Félix Rodríguez quedó insolvente a la fecha del vencimiento del contrato y es actualmente insolvente. La demanda, a nuestro juicio, aduce hechos suficientes para determinar una causa de acción y por lo tanto no cometió error la corte inferior al desestimar la excepción.

 Resuelta esta cuestión pasamos a considerar el error que atribuyen las apelantes a la corte inferior por haber admitido la sentencia en rebeldía dictada por el secretario de la Corte de Distrito de Arecibo en el caso de Congress Cigar Inc. contra Josefa Sandoval y Félix Rodríguez Hernández. Además de la sentencia se ofreció como prueba por la parte actora la demanda que sirvió de base a la misma. En este

caso se condenó a los demandados a pagar a la demandante la cantidad de $1,671.06 y $300 para intereses legales, costas y honorarios de abogado. Expresaron las demandadas su oposición a esta prueba, y al formular su excepción a la admisión de la sentencia en rebeldía, alegaron que de acuerdo con la demanda y con los contratos presentados en evidencia no fué éste un pleito en el cual pudo dictarse una sentencia en rebeldía, por tratarse de una cuestión que inevitablemente habría que someterla a la corte para que ésta hiciera la liquidación. El abogado de las apelantes sostiene que sólo procede dictar una sentencia en rebeldía por el secretario cuando se trata de una suma líquida. El abogado de la parte demandante y apelada arguye en oposición que las demandadas no han negado la alegación de la demanda donde se dice que la demandante liquidó el contrato refaccionario de conformidad con la demandada Josefa Sandoval, quedándole ésta a deber la suma de $1,671.06. Es verdad que esta alegación no aparece negada en la contestación a la demanda y que el silencio de las demandadas sería bastante para establecer el hecho de la liquidación si la misma demandante no se hubiera ocupado en ofrecer prueba para destruir su propia alegación y demostrar claramente, sin dejar lugar a dudas, su inexactitud.

En la acción que ahora se ejercita alega la demandante que el contrato se liquidó en 30 de junio de 1927, y en la demanda que radicó en 13 de octubre de 1927 en la Corte de Distrito de Arecibo, que culminó más tarde en la sentencia en rebeldía dictada por el secretario de la corte, alega dicha demandante que el día 30 de junio de 1927 y en épocas posteriores a esa fecha, y en distintas ocasiones, ha requerido a la demandada para liquidar el contrato de refacción y abonar a la cantidad tomada el importe del tabaco entregado, y se ha negado a liquidar así como a pagar la diferencia resultante a favor de la demandante, o cualquier cantidad a cuenta. Se alega que también se requirió de pago al fiador Félix Rodríguez, y se pide que se dicte sentencia condenando a

los demandados a que mancomunada y solidariamente procedan con la demandante a la liquidación de los contratos de referencia y a que paguen a la demandante la cantidad de $1,671.06 que le quedan a deber. Además de esta prueba documental, la prueba testifical ofrecida por la demandante demuestra que el contrato no fué nunca liquidado con la conformidad de la demandada Josefa Sandoval. Hermenegildo Colón, empleado de la demandante, declara que en su carácter de agente o inspector de las plantaciones de la demandante, hizo gestiones cerca de Josefa Sandoval en relación con la liquidación del tabaco y fué una vez a que le firmara la liquidación, contestándole la demandada que quien se entendía con eso era su hijo, y que por segunda vez le dijo que firmara la liquidación, a lo cual se negó diciendo que no estaba buena. Añade que doña Josefa no estuvo conforme y la liquidación se quedó sin firmar.

Basta leer la demanda radicada por la demandante contra Josefa Sandoval y Félix Rodríguez Hernández para llegar a la conclusión de que en dicho caso el secretario de la corte se excedió en sus atribuciones al dictar sentencia en rebeldía.

En el hecho cuarto de dicha demanda se alegó lo siguiente:

"Que la demandante cumplió religiosamente las obligaciones de ambos contratos entregando a la demandada Josefa Sandoval las cantidades que ésta necesitó, de acuerdo con los términos de ambos contratos; y que la dicha demandada Josefa Sandoval cumplió en parte el contrato entregando el siguiente tabaco: 2,566 libras de boliche, 1,449 libras de manojo, 447 libras de tripa, 1,615 libras de tabaco defectuoso, menos un 5 por ciento de merma. El cual tabaco está en los almacenes de la compañía para poderse fijar su precio y ser abonado al contrato de refacción.''

Reconoce en esta alegación la demandante que Josefa Sandoval ha entregado una cantidad de tabaco al cual hay que fijar precio para abonarlo al contrato de refacción. Luego, en el hecho quinto de dicha demanda, se requiere a la demandada para que liquide el contrato y para abonar a la cantidad tomada el importe del mismo, que al precio

corriente asciende a $688.19. En ninguna parte de la demanda se alega que el precio del tabaco se hubiese convenido, ni que se hubiese hecho abono alguno de acuerdo con la demandada, y por el contrario se afirma que ésta se ha negado a liquidar el contrato. En virtud de la rebeldía Josefa Sandoval aceptó la celebración con la demandante del contrato alegado en la demanda. Aceptó también la alegación de que el tabaco estaba en los almacenes para poderse fijar su precio, pero no aceptó el valor asignado a dicho tabaco por la demandante. En este caso la sentencia debió haber sido dictada por la corte y no por el secretario, cuyas funciones son puramente ministeriales.

En el caso de *Benítez* v. *Corte de Distrito,* 36 D.P.R. 450, esta corte cita con aprobación el caso de *Landwehr* v. *Gillete,* 174 Cal. 654, y copia párrafos de la opinión emitida por la Corte Suprema de California, comentando el inciso primero del artículo 585 del Código de Enjuiciamiento Civil de dicho estado, que corresponde al inciso primero del artículo 194 de nuestro código. Como muy bien dice el Tribunal Supremo de California en este caso, aunque el lenguaje usado en el inciso primero del artículo 585 del Código de Enjuiciamiento Civil californiano es bastante amplio y autoriza al secretario, después de anotar la rebeldía del demandado, a registrar sentencia en todos los pleitos que nazcan de un contrato sobre pago de dinero o para obtener perjuicios solamente, sin embargo, lo que significa es que el contrato, para justificar que el secretario, al anotar sentencia, ejerza tal autoridad, debe ser, por sus propios términos, según se desprende de la demanda, sobre pago de una cantidad fija y determinada de dinero, o para obtener perjuicios. Añade dicho tribunal que del contrato debe aparecer, ya sea de sus condiciones, según se desprende de la demanda, o de las alegaciones que ésta contiene, que una suma fija o líquida debe ser pagada por concepto de perjuicios; una cantidad que es fijada definitivamente por el contrato, o que, según las alegaciones de la demanda, pueda ser determinada por meros cálculos mate-

máticos hechos por el secretario. Cuando ésta es la situación, el secretario, al dictar sentencia, actúa meramente en su carácter ministerial.

Dice Bancroft, en el tomo tercero, pág. 2376 de su obra "Code Practice and Remedies":

"En vista de la naturaleza puramente ministerial de la autoridad del secretario de la corte, estas disposiciones deben ser interpretadas en el sentido de ser aplicables a contratos que, conforme se alega, exigen el pago de alguna suma determinada y específica de dinero o de indemnización. La suma debe haber sido fijada específicamente por el contrato, o de los términos de éste deben desprenderse los medios a virtud de los cuales el secretario pueda hacer ciertos cálculos sin que haya que recurrir a evidencia extrínseca. Bajo tales estatutos el secretario puede actuar por sí solo en aquellos casos en que de los datos suministrados pueda hacerse una computación exacta, o en que el importe de los daños y perjuicios consista en una cantidad líquida y cierta.

"Pero en todos los demás casos, cuando el contrato es indefinido e incierto en cuanto a la suma a obtenerse y los daños y perjuicios son ilíquidos, la actuación judicial de la corte es necesaria, en armonía con la disposición estatutaria al efecto. En tales casos el secretario anota la rebeldía de la parte demandada, mas el demandante debe acudir a la corte a fin de obtener el remedio solicitado en la demanda. Esto es así cuando se trata de acciones para recobrar el valor razonable de artículos vendidos o servicios prestados. En un pleito fundado en un pagaré que provee una suma razonable para honorarios de abogado, la incertidumbre que surge del contrato exige la intervención judicial y no puede ser evadida alegando meramente qué constituye una suma razonable, a pesar de que si el contrato mismo fija el importe de los honorarios, el secretario puede registrar la sentencia en rebeldía."

En el presente caso es el demandante mismo quien ofrece la prueba de que no hubo liquidación. El tabaco entregado por la demandada Josefa Sandoval está aún sin valorar. La misma demandante lo admite así, cuando la requiere en su demanda para liquidar y fijar el precio. No sabemos cuál es el importe de dicho tabaco y en ausencia de acuerdo entre las partes o de un pronunciamiento judicial, no puede anticiparse cuál sería el resultado definitivo de la cuenta una vez

hecha la liquidación. La demandante y apelada no ha establecido su condición de acreedora de la demandada Josefa Sandoval, para que surja el derecho de acción autorizado por el inciso tercero del artículo 1258 del Código Civil. Hasta la fecha la acción ejercitada parece prematura. Es de notarse que en la sentencia dictada por el secretario se fijan $300 para intereses legales, costas y honorarios de abogado de la demandante. Hemos examinado el contrato de refacción celebrado entre la Congress Cigar Co. Inc. y Josefa Sandoval viuda de Grau, y no hemos encontrado nada que se relacione con los honorarios de abogado a que ha sido condenada la demandada. También hemos examinado la demanda que culminó en la sentencia en rebeldía y en ella únicamente se mencionan los honorarios de abogado en la súplica de la misma, cuando se dice que se condene a la demandada a pagar una cantidad determinada con intereses legales, costas, gastos y honorarios de abogado.

■■ La corte inferior, al admitir como prueba la sentencia en rebeldía con la oposición de la demandada, manifestó que una sentencia no puede ser atacada colateralmente. El hecho de que el secretario no tenía autoridad para dictar sentencia surge de la faz de la demanda presentada como prueba por el propio demandante. En el caso de *Soliri* v. *Fasso*, 185 Pac. 322, la Corte Suprema de Montana, comentando una sentencia dictada por el secretario en exceso de sus atribuciones, se expresó así:

"El artículo 6719, inciso 1, de los Códigos Revisados provee:

" 'En un pleito que nazca de un contrato en cobro de dinero o para obtener perjuicios solamente, si no se hubiere presentado al secretario de la corte . . . contestación, excepción previa, . . . el secretario, a instancia del demandante, deberá hacer constar la rebeldía del demandado, y acto seguido anotará sentencia por la suma especificada en la demanda,' etc.

"Un examen de este estatuto nos lleva a la conclusión de que el secretario, al registrar sentencia de conformidad con el mismo, actúa ministerial y no judicialmente, debiendo únicamente atenerse a las alegaciones de la demanda para determinar si la acción es una que

nace de un contrato en cobro de dinero o para obtener perjuicios solamente, y de no ser así no tiene autoridad para registrar la sentencia, y si se equivoca, la sentencia será nula. McDonald v. Mayor, 55 Pac. 600; Crossman v. Vivienda W. Co., 136 Cal. 571, 69 Pac. 220; Shaw v. Chicago C. Co., 111 Cal. 549, 44 Pac. 237, y casos allí citados.

"Una acción para ejecutar un gravamen no es una que nace de un contrato sobre pago de dinero o para obtener perjuicios solamente. Asumiendo que de conformidad con el caso de Missoula Lumber Co. v. O'Donnell, 24 Mont. 65, 60 Pac. 594, 991, y con otras decisiones de esta corte, el que alega tener un gravamen puede renunciar su derecho y obtener sentencia por dinero solamente, en casos adecuados, el hecho de registrarse sentencia por el secretario, sin orden de la corte, podría en efecto equivaler a una desestimación del recurso en cuanto a los demás demandados, sin haberlo ordenado así el demandante, o podría, por lo menos, ser óbice a procedimientos ulteriores en el mismo. Para dictarse una sentencia adecuada bajo estas circunstancias se requeriría, no el cumplimiento de una mera función ministerial, sino actuación judicial. Empero, la fraseología del estatuto es clara y en acciones en que se exige algo más que el remedio solicitado, el secretario carece de jurisdicción para registrar la sentencia. State ex rel. Reeser v. Dist. Court, 53 Mont. 235, 163 Pac. 1149.

"Estando la sentencia registrada en exceso de la jurisdicción del secretario, ella era una mera nulidad y puede ser dejada sin efecto. State ex rel. Smith v. District Court, 55 Mont. 602, 179 Pac. 831. 'Cuando se llama la atención de la corte ante la cual se dictó, respecto a una sentencia nula, incumbe a ese tribunal eliminar de los autos tal nulidad mediante la cancelación de la anotación de tal sentencia.' Hodgdon v. Goodspeed, 60 Or. 1, 118 Pac. 167. Siendo nula, no constituiría una renuncia o impedimento contra el demandante en lo atinente a su causa de acción sobre el gravamen. Finlen v. Heinze, 27 Mont. 107, 69 Pac. 829, 70 Pac. 517.''

En el caso de *Crossman* v. *Vivienda Water Co.,* 136 Cal. 575, la Corte Suprema de California dijo:

"Sería extender extraordinariamente la facultad otorgada al secretario el resolver que éste puede registrar una sentencia en rebeldía por una suma a que claramente una parte demandante no tiene derecho. Una sentencia nula de su propia faz es aquélla que parece ser nula al examinarse el legajo de la sentencia. (People v. Harrison, 84 Cal. 607.) Este exceso de poder ejercido por el secretario de la

corte aparece de la faz de los autos y hace que la sentencia sea nula; y desprendiéndose tal cosa la nulidad puede ser atacada mediante moción. (People v. Thomas, 101 Cal. 571); especialmente en un caso como éste en que la acción está pendiente, no se ha celebrado el juicio y la moción es presentada por una de las partes en el litigio.''

La nulidad de la sentencia dictada por el secretario de la Corte de Distrito de Arecibo surge de la faz del legajo de la sentencia (*judgment roll*). La demanda demuestra claramente que dicho funcionario se excedió en el uso de sus funciones que son puramente ministeriales.

*Opinamos que debe revocarse la sentencia apelada y dictarse otra en su lugar declarando sin lugar la demanda, sin especial condenación de costas.*

### EN MOCION DE RECONSIDERACION

Marzo 28, 1933

En su moción de reconsideración dice la parte demandante que hemos revocado la sentencia apelada porque el contrato de refacción entre la demandante y la demandada Josefa Sandoval no fué liquidado, que hemos considerado un caso que no estuvo ante nosotros en apelación, que no hemos dado validez y eficacia a las admisiones de las partes consignadas en la demanda y que aparecen de la prueba testifical, que hemos revocado la sentencia basándonos principalmente en la admisión de un documento, cuando del resto del caso aparece evidencia que sostiene la sentencia apelada, y que hemos permitido un ataque colateral de la sentencia, al decir que la nulidad surgía del legajo de la misma, cuando la única prueba de tal legajo lo forma la demanda presentada y la sentencia misma. Estos son los errores que nos atribuye la parte demandante, Congress Cigar Company Inc.

El abogado de la demandante no interpreta correctamente la sentencia de este tribunal. Hemos resuelto que la demandante no ha establecido su calidad de acreedora de la demandada Josefa Sandoval. Para que proceda la rescisión de un contrato en fraude de acreedores, la parte actora

debe probar su calidad de acreedor. En este caso la única prueba que se ha presentado es una demanda que forma parte del legajo de la sentencia y una sentencia en rebeldía dictada por el secretario de la corte inferior en exceso de sus atribuciones. La demandante tuvo oportunidad de probar su carácter de acreedora sin necesidad de un previo pronunciamiento judicial que pudo obtener en este mismo pleito. No lo hizo, limitándose a presentar una sentencia en rebeldía que adolece del vicio de nulidad y que no tiene ningún valor probatorio. La demandante dice que hemos considerado un caso que no estuvo en apelación ante esta corte. Nos hemos limitado a examinar la prueba presentada por la propia demandante para demostrar su calidad de acreedora. Esta prueba, que se reduce a la sentencia en rebeldía acompañada de la demanda que le sirvió de base, demuestra claramente que el secretario no tuvo autoridad para dictarla y nosotros así lo resolvimos. En dicha demanda la Congress Cigar Company admite que el tabaco está sin valorar y que la cuenta no ha sido liquidada. Esta es una admisión de la propia interesada, que además ha sido independientemente probada por sus propios testigos. El precio que haya podido darle la demandante al tabaco en aquella demanda que no ha sido legalmente fallada no obliga a Josefa Sandoval ni puede ser tomado por nosotros en consideración.

La demandante, queriendo demostrar que hay prueba en el récord para sostener la sentencia apelada, copia una parte de la declaración de Félix Rodríguez, su propio testigo, donde dice que el contrato de refacción no fué liquidado y que sabe que la Sra. Sandoval quedó a deber a la Congress Cigar Company, porque el tabaco no cubría. Esta es una conclusión del testigo, quien al mismo tiempo declara que la cuenta no fué liquidada. También copia la demandante parte del testimonio de su testigo y empleado, Reinaldo Silva, quien dice que en conversación con Josefa Sandoval, cuando surgió a relucir lo de la deuda, esta señora dijo que era insolvente y que no podía garantizar nada porque no tenía con qué y

que la finca no le pertenecía porque la había vendido a una hija de ella y estaba insolvente.

En esta prueba se basa la demandante para decir que ha probado su calidad de acreedora. No lo creemos así nosotros. El contrato de refacción no ha sido liquidado, el tabaco entregado por Josefa Sandoval no ha sido valorado, y no es posible fijar su precio en ausencia de prueba. La demandante descansa únicamente en la sentencia dictada en rebeldía, que no tiene valor probatorio y que no puede demostrar que es acreedora de Josefa Sandoval. Esta corte no puede establecer conclusiones que no están justificadas por la prueba.

*Por las razones expuestas, no ha lugar a la reconsideración solicitada.*